10-4593-cr
United States v. Wagner-Dano

# United States Court of Appeals
## FOR THE SECOND CIRCUIT

August Term 2011

(Submitted: March 13, 2012       Decided: May 14, 2012)

No. 10-4593-cr

———————————————————

UNITED STATES OF AMERICA,
*Appellee*,


-v.-


MELISSA WAGNER-DANO,
*Defendant-Appellant.*

———————————————————

Before:     WINTER, LIVINGSTON, *Circuit Judges*, and RAKOFF, *District Judge.*[*]

Defendant-Appellant Melissa Wagner-Dano ("Wagner-Dano") appeals from a judgment of the United States District Court for the Northern District of New York (Norman A. Mordue, *Chief Judge*), entered October 26, 2010, convicting Wagner-Dano, upon her guilty plea, of wire fraud in violation of 18 U.S.C. § 1343, and sentencing her principally to 78 months' imprisonment. Wagner-Dano argues that her sentence is procedurally defective and substantively unreasonable. She argues that the district court procedurally erred by: (1) inadequately considering the 18 U.S.C. § 3553(a) sentencing factors; and (2) neglecting to address several of her objections to the Presentence Investigation Report, allegedly in violation of Federal Rule of Criminal Procedure 32(i)(3)(B). We hold that because Wagner-Dano did not raise either procedural objection before the district court, our review of both procedural arguments is restricted to plain error. We further conclude that neither alleged procedural defect amounts to plain error. Because we also conclude that the sentence chosen by the district court is substantively reasonable, we affirm the judgment of the district court.

———————————

[*] The Honorable Jed S. Rakoff of the United States District Court for the Southern District of New York, sitting by designation.

Edward R. Broton & Elizabeth S. Riker, Assistant United States Attorneys, *for* Richard S. Hartunian, United States Attorney for the Northern District of New York, Syracuse, New York, *for Appellee.*

Devin McLaughlin, Langrock Sperry & Wool, LLP, Middlebury, Vermont, *for Defendant-Appellant.*

LIVINGSTON, *Circuit Judge*:

Defendant-Appellant Melissa Wagner-Dano ("Wagner-Dano") appeals from a judgment of the United States District Court for the Northern District of New York (Norman A. Mordue, *Chief Judge*), entered October 26, 2010, convicting Wagner-Dano, upon her guilty plea, of wire fraud in violation of 18 U.S.C. § 1343, and sentencing her principally to 78 months' imprisonment. Wagner-Dano argues that her sentence is both procedurally defective and substantively unreasonable. She argues that the district court procedurally erred by: (1) inadequately considering the 18 U.S.C. § 3553(a) sentencing factors; and (2) neglecting to address several of her objections to the Presentence Investigation Report ("PSR"), allegedly in violation of Federal Rule of Criminal Procedure 32(*i*)(3)(B). We hold that because Wagner-Dano did not raise either procedural objection before the district court, our review of both procedural arguments is restricted to plain error. We further conclude that neither alleged procedural defect amounts to plain error. Because we also conclude that the sentence

imposed by the district court is substantively reasonable, we affirm the judgment of the district court.

## BACKGROUND

### I. The Offense Conduct

Melissa Wagner-Dano, a thirty-three-year-old married mother of two, was employed as a bookkeeper by: (1) the Town of Lewis, New York, a small community of about 1100; (2) the Oneida Lewis Milk Producers Cooperative ("OLMPC"), a dairy farm cooperative of eighteen dairy farms in Oneida and Lewis counties; and (3) the Boonville Farms Cooperative, Inc. ("BFC"), made up of thirty-nine member dairy farms in Oneida, Lewis, and Herkimer counties. The latter two regional dairy cooperatives sell milk from their dairy farm members to milk processors, collect the receipts, and pay their respective cooperative members. As the bookkeeper for the Town and the dairy farm cooperatives, Wagner-Dano controlled the bank accounts for all three entities.

From January 2007 through December 2009, Wagner-Dano stole $1,169,717.74 from her employers through unauthorized withdrawals from their bank accounts by means of wire transfers, Internet accounts, fictitious payroll accounts, and checks payable to herself. She transferred funds between the

three entities' accounts to cover her theft.[1]  Wagner-Dano used the stolen money to purchase, among other things, property improvements, a customized truck for "truck pulling" competitions, and fifteen gypsy horses.

The scheme began to unravel in September 2009, when a BFC board member was notified by the company's bank that BFC's $250,000 line of credit had reached its limit.  The board member contacted Wagner-Dano, who falsely told him that the problem stemmed from the malfunction of her computer.  She then paid back BFC's line of credit, also paying associated late fees and penalties on the account.  She thereafter transferred $50,000 from her personal checking account to the Town of Lewis's bank account.  In a letter to the BFC board of directors she sent in October, Wagner-Dano repeated her explanation that the credit line had reached its limit as a result of unauthorized transfers caused by a computer crash.  When OLMPC board members confronted her one month later, however, she admitted that she had transferred money between accounts for OLMPC and the Town of Lewis.  Wagner-Dano waived indictment on April 19, 2010, and pleaded guilty to one count of wire fraud in a scheme against OLMPC, BFC, the members of those cooperatives, and the Town of Lewis.

---

[1] Wagner-Dano also concealed her activities by under-reporting to the dairy farms the value of their milk.  The amount owed for milk provided by these farms is dependent on the milk's composition—its percentage butter fat, protein, and solids.  Wagner-Dano under-reported the quality of the milk to the dairy farmers, and then billed the processors for its true value, pocketing the difference.  Wagner-Dano's false reporting of milk quality to the farmers resulted not only in loss to the cooperatives, but in unnecessary and costly modifications to farming practices in efforts to improve the milk.

*II. The Presentence Investigation Report*

The United States Probation Office prepared a PSR that summarized the facts of Wagner-Dano's offense. It contained a calculation of Wagner-Dano's sentencing range pursuant to the United States Sentencing Guidelines ("the Guidelines") of 63 to 78 months' imprisonment. Wagner-Dano submitted a lengthy sentencing memorandum objecting to several statements in the PSR. The PSR was thereafter revised to address some of these objections.[2] Wagner-Dano's remaining objections were appended to the PSR.

The revised PSR and its addenda recount eight objections made by Wagner-Dano.

First, although the PSR states that $1,169,717.74 was lost, Wagner-Dano objected that the correct loss amount was $1,119,595.35.

Second, the PSR states that Wagner-Dano owed $1,016,867.46 in restitution, but she argued that the proper restitution amount was $966,745.07.

Third, the PSR reports that "the Town of Lewis Supervisor . . . . states that the entire budget for the Town of Lewis is approximately $500,000 and the defendant stole half." Wagner-Dano objected that "it would be more accurate to consider the loss over the three-year period she took the funds, in which case the stolen funds represent about 15% of the Town's budget."

---

[2] These modifications to the PSR did not affect the Probation Office's calculation of the Guidelines range.

Fourth, the PSR states that "[o]n October 29, 2009, the defendant wrote a letter and sent it via fax to the Board of Directors of BFC in which she falsely stated that unauthorized transfers from the BFC checking account had occurred and were the result of her computer system having crashed." Wagner-Dano objected that she wrote this letter not in an attempt to cover up her thefts, but rather because she was advised to "concoct[] an excuse for the missing money" by BFC's treasurer, who "was running for public office at the time and apparently wanted to avoid having to take any responsibility for her actions."

Fifth, the PSR states that:

> In October and November of 2009, Wagner-Dano repaid some of the monies she stole from the victims before she was under investigation for or charged with the offense. Specifically, the defendant made payments totaling $81,900 to BFC; $17,800 to OLMPC; and $60,000 to the Town of Lewis. . . . [L]oss shall be reduced by the money returned by the defendant to the victim before the offense was detected. The time of detection of the offense is the time the defendant knew or reasonably should have known that the offense was detected or about to be detected by a victim or government agency. Wagner-Dano knew or reasonably should have known her offense was detected or about to be detected by the victims because she had been questioned by BFC about missing monies in September 2009. The defendant not only started repaying some of the money, she also lied to the victims and reported the money shortages were due to computer problems she was having and promised she would resolve the issue.

The PSR also specifically states that in October 2009, Wagner-Dano wrote two checks, each for $25,000, to the Town of Lewis, and that "[a]ccording to the Town Supervisor, the defendant deposited this money into the Town bank account

because she knew the Town's expenses would soon be paid from this account and she did not want her theft to be discovered." Wagner-Dano objected that her October 2009 and November 2009 repayments were not attempts to cover up her theft, but rather were intended "to make restitution," because "[s]he knew she had been 'found out' when she was questioned about the missing money at the end of September 2009."

Sixth, the PSR states in its "Mitigating and Aggravating Factors" section that "in the month following the commencement of the official criminal investigation, Wagner-Dano transferred ownership of the house she and her husband owned to her parents. Although she had made at least $100,000 in improvements to the property during the period she committed the crime, she received no compensation as part of the transfer." Wagner-Dano and her husband had purchased the home in January 2009 from her father, who gave them a mortgage loan in connection with the purchase. Wagner-Dano objected that when she transferred the house to her parents after her embezzlement was discovered, she "was led to believe the house would be sold and any proceeds used to pay restitution." She claimed that "[h]er parents' attorney sent a letter notifying [her and her husband that] the mortgage was in default and threatening . . . foreclosure," and that "the transfer was not an attempt to place the asset out of the reach of the defendant's creditors."

7

Seventh, the "Mitigating and Aggravating Factors" section of the PSR also states:

> The following information may be viewed as aggravating. When the victims became suspicious of the defendant's accounting activities and started to question her about missing monies, Wagner-Dano started selling the assets she had derived from the stolen moneys to try and repay the victims. In an apparent attempt to mitigate the loss and thereby her culpability, she sold items (e.g. the gypsy horses and custom truck) for much less than what may have been their actual value.

Wagner-Dano objected that the "sale of her assets immediately following the discovery of the offense . . . was only [an] attempt[] to make restitution and not . . . to cover up the thefts." According to Wagner-Dano, she "sold the horses and pulling truck for the best prices she was offered," but the gypsy horse breed "had depreciated in value due to increased availability."

Eighth and finally, the PSR indicates that Wagner-Dano objected to its valuation of the custom truck she purchased:

> Over the course of her theft, the defendant and her husband used the stolen money to accumulate assets, make improvements in their property, and participate in truck pulling, which can be an expensive hobby. Specifically, Wagner-Dano purchased 15 gypsy horses with an estimated value of at least $300,000; made at least $100,000 worth of improvements in her property; and customized a truck for truck pulling that was worth approximately $55,000 after all the improvements were made. (The value of this truck is disputed by the parties. This truck, known as "Sweet Addiction[,]" was posted for sale on the Internet on September 29, 2009 with an asking price of $55,000. The government has documentation from the mechanic who made the modifications to the truck for the defendant and her husband that he did work on the truck costing

8

$45,299.69 for parts and labor. The defendant reports she paid $30,000 to $35,000 for the truck in 2000 and obtained a loan for $23,000 in 2007 to make improvements. The truck was sold in November 2009 for $10,000.)

Wagner-Dano also objected that she did not use stolen money to purchase or customize the pulling truck.

### III. Sentencing

At the outset of sentencing, the district court asked, "[D]o counsel have any objections to the facts as stated in the presentence report?" Wagner-Dano's counsel replied, "Judge, my only objections were summarized in the addendum." Counsel specifically stated that Wagner-Dano had no objection to the Probation Office's calculation of Wagner-Dano's offense level or criminal history category.

The Supervisor of the Town of Lewis spoke at sentencing, indicating that the Town had lost the money it had set aside for a town hall and unemployment insurance fund. Two dairy farmers also made statements.[3] Wagner-Dano's counsel addressed the court at length, and Wagner-Dano spoke, expressing remorse.

Later during the sentencing hearing, the district court stated:

> I have reviewed and I've considered all pertinent information including but not limited to the presentence investigation report, the addendum, the submissions by counsel. I've also considered,

---

[3] In addition, dozens of victim impact statements and letters to the court were attached to the PSR, most of them from the farm families who suffered losses.

Mr. Hildebrandt [Wagner-Dano's counsel], the factors that are outlined in 18 U.S.C. [§] 3553(a) as well as the Sentencing Guidelines. I'm adopting the factual information contained in the presentence report.

The district court then sentenced Wagner-Dano to 78 months' imprisonment. Wagner-Dano's counsel made no objections.

## DISCUSSION

On appeal, Wagner-Dano argues that her sentence should be vacated on both procedural and substantive grounds. Procedurally, she argues that the district court gave inadequate consideration to the sentencing factors set forth in 18 U.S.C. § 3553(a). She also argues that the district court violated Rule 32(*i*)(3)(B) of the Federal Rules of Criminal Procedure by neglecting to address several of her objections to the PSR.[4] We hold that our review of both of these procedural arguments is restricted to plain error because Wagner-Dano failed to raise them before the district court. Under this standard of review, neither of the alleged procedural defects constitutes reversible error. Wagner-Dano next argues that her 78-month sentence is substantively unreasonable. We disagree. Accordingly, we affirm the judgment of the district court.

---

[4] Rule 32(*i*)(3)(B) provides that, "[a]t sentencing, the court . . . must—for any disputed portion of the presentence report or other controverted matter—rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing." Fed. R. Crim. P. 32(*i*)(3)(B).

## I. Procedural Adequacy

### A. Consideration of § 3553(a) Sentencing Factors

Section 3553(a) of Title 18 requires a district court to consider several factors in determining a sentence.[5] Failure to consider the § 3553(a) factors constitutes procedural error. *United States v. Cavera*, 550 F.3d 180, 190 (2d Cir. 2008) (*en banc*). In this Circuit, "we presume 'that a sentencing judge has faithfully discharged her duty to consider the statutory factors.'" *United States v. Verkhoglyad*, 516 F.3d 122, 129 (2d Cir. 2008) (quoting *United States v.*

---

[5] Section 3553(a) provides that:

The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth of paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established [and recommended by the Sentencing Guidelines] . . . ;

(5) any pertinent policy statement . . . issued by the Sentencing Commission . . . [;]

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

*Fernandez*, 443 F.3d 19, 30 (2d Cir. 2006)). "[W]e do not require 'robotic incantations' that the district court has considered each of the § 3553(a) factors." *Cavera*, 550 F.3d at 193 (quoting *United States v. Crosby*, 397 F.3d 103, 113 (2d Cir. 2005)). Moreover, "we never have required a District Court to make specific responses to points argued by counsel in connection with sentencing." *United States v. Bonilla*, 618 F.3d 102, 111 (2d Cir. 2010).

Wagner-Dano argues first that the district court failed to consider "the nature and circumstances of the offense and the history and characteristics of the defendant" as required by 18 U.S.C. § 3553(a)(1). Specifically, she argues that the district court failed to address her repayment of over $350,000; her lack of criminal history; and her "consistent history of hard work." Appellant's Br. at 19. Wagner-Dano further argues that the district court failed to consider her low risk of recidivism based on her sex, age, education level, family status, and offense. She contends that these facts are relevant to the need for her incapacitation and specific deterrence, and thus should have been addressed by the district court as part of its consideration of the 18 U.S.C. § 3553(a)(2)(B) and (C) factors.

Wagner-Dano presented substantially these arguments to the district court in a sentencing memorandum and explained many of them again, orally, at sentencing. Nothing in the record of this case indicates that the district court

did not consider these arguments or the § 3553(a) factors more generally. Indeed, after hearing these arguments, Chief Judge Mordue stated, "I have reviewed and I've considered all pertinent information including but not limited to the presentence investigation report, the addendum, the submissions by counsel. I've also considered . . . the factors that are outlined in 18 U.S.C. [§] 3553(a) as well as the Sentencing Guidelines." We have concluded in the context of a similar procedural challenge to a sentence that a nearly identical district court statement "could not have been more clear." *Bonilla*, 618 F.3d at 111.

Moreover, where a defendant does not object to a district court's alleged failure to properly consider all of the § 3553(a) factors, our review on appeal is restricted to plain error. *See id.*; *United States v. Villafuerte*, 502 F.3d 204, 208 (2d Cir. 2007). Wagner-Dano did not object that the district court procedurally erred by failing to give adequate consideration to the § 3553(a) factors; she raises that argument for the first time on appeal. Accordingly, the plain-error standard applies. We find no error, much less plain error, here.

*B.* *Addressing Disputed Portions of the Presentence Report*

*1.* *Wagner-Dano's Rule 32(i)(3)(B) Claim*

Rule 32(*i*)(3)(B) of the Federal Rules of Criminal Procedure states that a district court, at sentencing, "must—for any disputed portion of the presentence

report or other controverted matter—rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing." Wagner-Dano argues that the district court failed to comply with Rule 32(*i*)(3)(B) by neglecting to address several of the objections she made regarding the PSR.

Some of Wagner-Dano's objections—such as the loss and restitution amounts, the value of the pulling truck, and whether the truck was purchased with stolen money—directly disputed the PSR's statement of the facts. These issues were resolved by the district court's decision to adopt as findings the factual information in the PSR. Others of Wagner-Dano's objections, however, did not directly dispute the facts as set forth in the PSR, but rather attempted to clarify Wagner-Dano's motives or provide context for the PSR's facts. These include Wagner-Dano's objections regarding: (1) her motive for writing the October 29, 2009, letter which falsely blamed BFC's account deficits on a computer problem; (2) her motive for making repayments in October and November 2009; (3) her motive for selling her assets; and (4) her motive for transferring her house to her parents. Because the PSR did not directly conflict with Wagner-Dano's explanations on these issues, the district court's adoption of the PSR may not have disposed of these objections.

Wagner-Dano presented her factual objections in a memorandum to the district court prior to sentencing. She mentioned them at sentencing only insofar as the district court asked, "[D]o counsel have any objections to the facts as stated in the presentence report?", to which Wagner-Dano's counsel replied, "Judge, my only objections were summarized in the addendum." The district court then adopted the PSR's statement of facts—presumably believing that in so ruling, it had disposed of all of Wagner-Dano's objections. *Cf. United States v. Prince*, 110 F.3d 921, 924 (2d Cir. 1997) ("A district court satisfies its obligation to make 'findings sufficient to permit appellate review . . . if the court indicates, either at the sentencing hearing or in the written judgment, that it is adopting the recommendations in the [PSR].'") (omission in original) (quoting *United States v. Thompson*, 76 F.3d 442, 456 (2d Cir. 1996)). When the district court adopted the PSR and pronounced its sentence, Wagner-Dano did not object on the procedural ground that the court had failed to address her objections to the PSR and rule on the matters she disputed.

The parties disagree whether, under these circumstances, our review of the district court's compliance with Rule 32(*i*)(3)(B) is limited to plain error. For the reasons set forth herein, we hold that it is. We review only for plain error where, as here, an appellant asserts that the district court neglected to address an objection to the PSR in violation of Rule 32(*i*)(3)(B), but that appellant failed

to alert the district court of this procedural issue after the district court made its findings or pronounced its sentence. Finding no plain error here, we reject Wagner-Dano's claim that her sentence was procedurally flawed by virtue of the district court's alleged failure to rule on her objections to the PSR.

### 2. *The Applicable Standard of Review*

This Circuit's precedents are unclear regarding what standard of review we apply where a defendant initially makes an objection to the PSR at sentencing, but then fails to object when the district court allegedly violates Rule 32(*i*)(3)(B) by neglecting to resolve or otherwise address the objection.[6] None of our Rule 32(*i*)(3) cases directly addresses the applicable standard of review.[7] Nonetheless, our practice with regard to the current Rule 32(*i*)(3) comports with reviewing unpreserved Rule 32(*i*)(3) challenges only for plain error, and we believe this is the better reading both of our precedents and of the Federal Rules of Criminal Procedure.

---

[6] We note that the procedural argument that a district court failed to comply with Rule 32(*i*)(3) by neglecting to address an objection to the PSR is distinct from the substantive argument that a district court's resolution of such an objection was erroneous. Wagner-Dano makes only the former, procedural argument. We have already held that the latter, substantive argument must be raised at sentencing to be preserved for appeal. *See United States v. Rizzo*, 349 F.3d 94, 99 (2d Cir. 2003).

[7] In an unpublished summary order, we have suggested that we review unpreserved Rule 32(*i*)(3) challenges only for plain error. *See United States v. Dominguez*, 393 F. App'x 773, 778–79 (2d Cir. 2010) (unpublished summary order) (distinguishing between an unpreserved factual challenge to the PSR that was waived and an unpreserved procedural challenge "about the district court's failure to make explicit findings as to drug quantity," and stating that our review of the latter is only for plain error). However, we are not bound by that decision. *See* 2d Cir. Local R. 32.1.1(a).

"Federal Rule of Criminal Procedure 52(b), which governs on appeal from criminal proceedings, provides a court of appeals a *limited* power to correct errors that were forfeited because not timely raised in district court." *United States v. Olano*, 507 U.S. 725, 731 (1993) (emphasis added). Accordingly, our general rule is that "issues not raised in the trial court because of oversight, including sentencing issues, are normally deemed forfeited on appeal unless they meet our standard for plain error." *Villafuerte*, 502 F.3d at 207. *See generally* Fed. R. Crim. P. 52; Charles Alan Wright *et al.*, *Federal Practice & Procedure* § 856 (3d ed. 2011) ("There would seem to be no error to which plain error review would not apply . . . . No exception for sentencing errors appears in either the Rule [52(b)] or the [Supreme] Court's cases interpreting the rule."). This Circuit has recognized exceptions in the sentencing context where an appellant lacked prior notice of the aspect of the sentence challenged on appeal, *see Villafuerte*, 502 F.3d at 208, in part because "noticing unobjected to errors that occur at trial precipitates an entire new trial that could have been avoided by a timely objection, whereas correcting a sentencing error results in, at most, only a remand for resentencing." *United States v. Sofsky*, 287 F.3d 122, 125 (2d Cir. 2002). But "we have declined to overlook a lack of objection where the sentencing issue was not particularly novel or complex." *Villafuerte*, 502 F.3d at 208 (internal quotation marks omitted).

17

For example, as discussed in the prior section of this opinion, our decision in *United States v. Villafuerte*, 502 F.3d 204 (2d Cir. 2007), held that plain-error analysis applies where an appellant argues for the first time on appeal that the district court failed to consider the § 3553(a) sentencing factors.  Although the defendant in *Villafuerte* made a substantive argument before the district court for a below-Guidelines sentence based on his personal circumstances, *see id.* at 206, we held that such a substantive objection did not preserve his procedural challenge that the district court had neglected to consider the sentencing factors, *see id.* at 207.  We explained that "[b]ecause we have unambiguously required consideration of the § 3553(a) factors . . . in every criminal sentencing proceeding [since 2005]," this issue is not particularly novel or complex.  *Id.* at 208; *see id.* at 211.  Accordingly, "raising an objection to the failure to do so in order to alert the district court to the problem is neither difficult nor onerous.  This requirement alerts the district court to a potential problem at the trial level and facilitates its remediation at little cost to the parties, avoiding the unnecessary expenditure of judicial time and energy in appeal and remand."  *Id.* at 208.

*Villafuerte*'s reasoning is equally applicable to Rule 32(*i*)(3).  The requirements of Rule 32(*i*)(3)(B), like the requirements of § 3553(a), are neither novel nor complex.  If the defendant or the Government believes that a particular factual issue is material and the district court neglects to address the

issue at sentencing, it is not difficult—indeed, it should be intuitive—to bring this procedural error to the district court's attention. Employing a plain error standard in the review of Rule 32(*i*)(3) arguments raised for the first time on appeal, moreover, is consistent with the practice in those sister circuits that appear to have considered the issue. *See United States v. Williamson*, 53 F.3d 1500, 1527 (10th Cir. 1995) (reviewing only for plain error because although the defendant "raised an objection to [a] statement in the presentence report, she candidly concedes she did not make a separate objection to the district court's failure to make an appropriate finding under Rule 32[]"); *see also United States v. Brame*, 448 F. App'x 364, 366 (4th Cir. 2011) (unpublished decision); *United States v. Vonner*, 516 F.3d 382, 388 (6th Cir. 2008) (*en banc*). *But cf. United States v. Williams*, 612 F.3d 500, 517 (6th Cir. 2010) (distinguishing *Vonner* as not involving "a genuine dispute between the parties," but "emphasiz[ing] that [*Williams*] is not an ordinary case").

We note that our decision today departs from our practice with regard to Rule 32(*i*)(3)'s earliest predecessor, Rule 32(c)(3)(D) (1988).[8] But a brief foray

---

[8] Rule 32(c)(3)(D), which was adopted in 1983, provided that:

If the comments of the defendant and the defendant's counsel or testimony or other information introduced by them allege any factual inaccuracy in the presentence investigation report or the summary of the report or part thereof, the court shall, as to each matter controverted, make (i) a finding as to the allegation, or (ii) a determination that no such finding is necessary because the matter controverted will not be taken

19

into the history of our Rule 32 precedents explains why the plain-error standard applies to the current Rule 32(*i*)(3) even if our review under its predecessor was more searching.

Our cases decided under Rule 32(c)(3)(D), from its adoption in 1983 until the rule was amended in 1994, held that even "virtually *de minimis*" technical violations of Rule 32(c)(3)(D) required remand for clarification—though we rarely required resentencing. *United States v. Bradley*, 812 F.2d 774, 782 (2d Cir. 1987); *see also United States v. Feigenbaum*, 962 F.2d 230, 232 (2d Cir. 1992); *United States v. Williamsburg Check Cashing Corp.*, 905 F.2d 25, 27 (2d Cir. 1990); *Dunston v. United States*, 878 F.2d 648, 650 (2d Cir. 1989) (*per curiam*); *United States v. Arefi*, 847 F.2d 1003, 1007–08 (2d Cir. 1988); *United States v. Ursillo*, 786 F.2d 66, 71 (2d Cir. 1986). And although none of our opinions in those cases mentions whether the appellant made a separate procedural objection when the district court allegedly failed to address a factual objection to the PSR, this silence suggests that in most of those cases no such separate objection was made. Our strict review under Rule 32(c)(3)(D) therefore may have been incompatible with the plain-error standard.

---

into account in sentencing. A written record of such findings and determinations shall be appended to and accompany any copy of the presentence investigation report thereafter made available to the Bureau of Prisons.

Rule 32(c)(3)(D) (1988).

The exactness we required under that rule stemmed from its explicit purpose of protecting the defendant even after sentencing "because the PS[R] is utilized by the Parole Commission in its determination of parole eligibility for a defendant." *Dunston*, 878 F.2d at 650. The Advisory Committee that drafted Rule 32(c)(3)(D) explained that "the Bureau of Prisons and the Parole Commission make substantial use of the presentence investigation report," and thus the purpose of that rule was "to ensure that [a clear and accurate] record comes to the attention of the Bureau or Commission when these agencies utilize the presentence investigation report." Fed. R. Crim. P. 32 advisory committee's note, 1983 Amend. (1988). Our strict interpretation of that rule reflected that stated purpose; indeed, our first case to apply the rule "strictly" involved a motion filed by a prisoner more than a year after sentencing, purportedly pursuant to Rule 32(c)(3)(D), "to strike several allegedly erroneous items from the presentence report because they were 'extremely prejudicial to petitioner in his application for parole consideration.'" *Ursillo*, 786 F.2d at 68.

Since then, the relevant portion of Rule 32 has been materially amended twice, each time to reduce the burdens on the district court and to confine the rule to the more limited purpose of sentencing. The 1994 amendment indicated that a court "need not resolve controverted matters which will 'not be taken into account in, *or will not affect*, sentencing,'" with the intended purpose of

21

"identifying and narrowing the issues to be decided at the sentencing hearing."[9] Fed. R. Crim. P. 32 advisory committee's note, 1994 Amend. (1994) (emphasis added) (quoting Fed. R. Crim. P. 32(c)(1) (1994)). In 2002, the rule was both restyled and amended to its current form. Its substantive changes stemmed from a concern that the rule might be read broadly to require a court to address every "unresolved objection[]"—even if uncontroverted and irrelevant to the sentence—and thus "place an unreasonable burden on the court without providing any real benefit to the sentencing process." Fed. R. Crim. P. 32 advisory committee's note, 2002 Amend. (2006). Accordingly, "[r]evised Rule 32(*i*)(3) narrows the requirement for court findings to those instances when the objection addresses a 'controverted matter.'" *Id.*

---

[9] The relevant portion of the 1994 amendment provided that:

> At the sentencing hearing, the court must afford counsel for the defendant and for the Government an opportunity to comment on the probation officer's determinations and on other matters relating to the appropriate sentence, and must rule on any unresolved objections to the presentence report. The court may, in its discretion, permit the parties to introduce testimony or other evidence on the objections. For each matter controverted, the court must make either a finding on the allegation or a determination that no finding is necessary because the controverted matter will not be taken into account in, or will not affect, sentencing. A written record of these findings and determinations must be appended to any copy of the presentence report made available to the Bureau of Prisons.

Fed. R. Crim. P. 32(c)(1) (1994).

Our cases decided under the modern Rule 32(*i*)(3), with its more limited focus on controverted issues relevant to sentencing, have departed from our prior practice. For example, in *United States v. Gilmore*, 599 F.3d 160 (2d Cir. 2010), the district court heard the defendant's objections regarding the applicability of a Sentencing Guidelines enhancement, said "Thank you very much," and adjourned the proceeding without making a ruling. *Id.* at 165. On appeal, we agreed with the appellant that "the court's failure to rule on his objection to the court's interpretation of the 2004 Guidelines was at least a technical error" in violation of Rule 32(*i*)(3)(B). *Gilmore*, 599 F.3d at 168. We nonetheless affirmed the district court's judgment because we concluded that "this error was harmless, as it is clear that the inapplicability of the enhancements would not have affected the sentence imposed." *Id.* Not once since the 2002 amendment to Rule 32 have we remanded a case to a district court for it to remedy a technical violation of Rule 32(*i*)(3).

For the reasons stated here, we conclude that our prior practice under Rule 32(*i*)(3), although we have not explicitly addressed the standard of review, is wholly compatible with a plain-error standard of review for unpreserved challenges.[10] Accordingly, seeing no reason or justification for carving out an

[10] We note that consistent with the changes from Rule 32(c)(3)(D) to Rule 32(*i*)(3)—and the shift in our jurisprudence from remanding even *de minimis* violations under the old rule to subjecting alleged violations of the modern rule to harmless error

exception to Rule 52(b) in this context, we hold that Wagner-Dano waived her Rule 32(*i*)(3) argument by failing to alert the district court of her procedural objection that the court had not adequately addressed her disagreements with the PSR. We therefore review for plain error.

### 3. Applying the Plain Error Standard

As the Supreme Court has recently reiterated, when reviewing for plain error,

> an appellate court may, in its discretion, correct an error not raised at trial only where the appellant demonstrates that (1) there is an error; (2) the error is clear or obvious, rather than subject to reasonable dispute; (3) the error affected the appellant's substantial rights, which in the ordinary case means it affected the outcome of the district court proceedings; and (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings.

*United States v. Marcus*, 130 S. Ct. 2159, 2164 (2010) (brackets and internal quotation marks omitted). "[T]he burden of establishing entitlement to relief for plain error is on the defendant claiming it . . . ." *United States v. Dominguez Benitez*, 542 U.S. 74, 82 (2004).

---

review—Congress has provided an alternative mechanism to address controverted issues that prisoners who have already been sentenced may seek to resolve. *See* Prison Litigation Reform Act of 1995, Pub. L. No. 104-134, §§ 801–810, 110 Stat. 1321-66 (1996) (codified as amended in scattered sections of 11, 18, 28, and 42 U.S.C.); *United States v. Arevalo*, 628 F.3d 93, 99 (2d Cir. 2010) (holding that an appeal waiver may bar an appeal premised on a district court's alleged violation of Rule 32(*i*)(3), and that "to the extent the information in the presentence report causes [the defendant] problems with the Bureau of Prisons, he can seek to address any issues through the Bureau of Prisons' administrative remedy program") (citing 28 C.F.R. §§ 542.10–.19 and *Johnson v. Testman*, 380 F.3d 691, 693 (2d Cir. 2004) (describing the administrative remedy program)).

Even assuming *arguendo* that the district court in this case erred by insufficiently addressing Wagner-Dano's objections to the PSR, we cannot say that the error is plain. To be "plain," an error must be so obvious that "the trial judge and prosecutor were derelict in countenancing it, even absent the defendant's timely assistance in detecting it." *United States v. Frady*, 456 U.S. 152, 163 (1982). That is clearly not the case here.

Most of the objections Wagner-Dano raised that were not disposed of by the district court's adoption of the PSR—regarding, for instance, the proper way to characterize the Town of Lewis's loss and Wagner-Dano's motives for sending the letter to the BFC board of directors, for selling her assets, and for transferring her house to her parents—were at least arguably not "controverted matters" within the meaning of Rule 32(*i*)(3). The Government did not disagree with her assertions and the PSR did not directly conflict with Wagner-Dano's claims. Moreover, to the extent the PSR *did* contradict Wagner-Dano's factual assertions, the district court's adoption of the PSR's findings satisfied Rule 32(*i*)(3)'s requirements.

Granted, Wagner-Dano's objection that her $50,000 repayment to the Town of Lewis in October 2009 was intended to make restitution rather than to cover up her theft clearly conflicts with the PSR's statement that, "[a]ccording to the Town Supervisor, the defendant deposited this money into the Town bank

account because . . . she did not want her theft to be discovered." The court's adoption of the PSR did not resolve this factual dispute, because the PSR itself took no position with regard to it. We cannot conclude on this record, however, that the district court's failure to address this issue prejudiced Wagner-Dano's sentence. And regardless, we do not believe that the alleged failure by the district court to address this objection so "seriously affect[ed] the fairness, integrity, or public reputation of judicial proceedings" that we should exercise our discretion to correct it. *Marcus*, 130 S. Ct. at 2164.

## II. *Substantive Reasonableness*

Wagner-Dano next argues that her sentence of 78 months' imprisonment is substantively unreasonable based on her voluntary repayment efforts, lack of criminal history, work history, low risk of recidivism, and family status. She also points out that the victims' loss amount ($1,169,717.74) was at the bottom end of the range for a sixteen-level enhancement (between $1,000,000.01 and $2,500,000, *see* U.S.S.G. § 2B1.1(b)(1)), and that the number of victims (56) was also at the bottom end of the range for a four-level enhancement (between 50 and 249 victims, *see* U.S.S.G. § 2B1.1(b)(2)).

"We will . . . set aside a district court's substantive determination only in exceptional cases where the trial court's decision cannot be located within the range of permissible decisions." *Cavera*, 550 F.3d at 189 (emphasis and internal

quotation marks omitted). Wagner-Dano's sentence is within the Guidelines range, and although we do not presume that a within-Guidelines sentence is substantively reasonable, *see United States v. Dorvee*, 616 F.3d 174, 183 (2d Cir. 2010), "in the overwhelming majority of cases, a Guidelines sentence will fall comfortably within the broad range of sentences that would be reasonable in the particular circumstances." *United States v. Friedberg*, 558 F.3d 131, 137 (2d Cir. 2009). We see nothing in this record to indicate that the district court imposed an unacceptably harsh sentence here.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court.