*United States v. Thompson*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 18th day of March, two thousand twenty-five.

PRESENT:
> JOHN M. WALKER, JR.,
> RICHARD C. WESLEY,
> JOSEPH F. BIANCO,
> *Circuit Judges*.

---

UNITED STATES OF AMERICA,

*Appellee*,

v.

24-1513-cr

MARLON THOMPSON,

*Defendant-Appellant*.

---

FOR APPELLEE: Samantha Alessi, Assistant United States Attorney (Dylan A. Stern and Gabriel Park, Assistant United States Attorneys, *on the brief*), *for* John J. Durham, Interim United States Attorney for the Eastern District of New York, Brooklyn, New York.

FOR DEFENDANT-APPELLANT: John F. Carman, Garden City, New York.

Appeal from a judgment of the United States District Court for the Eastern District of New York (Joan M. Azrack, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court, entered on May 21, 2024, is **AFFIRMED**.

Defendant-Appellant Marlon Thompson appeals from the district court's judgment of conviction entered after a jury trial at which he was found guilty of (1) conspiracy to distribute and possess with intent to distribute controlled substances, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A); (2) distribution of a controlled substance causing the death of Fredrick Koenig, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C); (3) possession of an unregistered firearm, in violation of 26 U.S.C. §§ 5845(a), 5861(d), and 5871; and (4) possession of a firearm after having been convicted of a felony, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). The district court, after calculating Thompson's United States Sentencing Guidelines ("Guidelines") range to be 360 months' to life imprisonment, sentenced Thompson principally to 360 months' imprisonment, followed by five years of supervised release. On appeal, Thompson argues that (1) the district court erred in admitting into evidence at trial a recording of a 911 call placed by Koenig's mother, and (2) the sentence the district court imposed was both procedurally and substantively unreasonable. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, to which we refer only as necessary to explain our decision to affirm.

## I.    Evidentiary Ruling

Thompson first argues that the district court erred in not excluding from evidence at trial, under Federal Rule of Evidence 403, a recording of a 911 call made by Koenig's mother after she found Koenig's body because it had little probative value and was highly prejudicial.  We disagree.

Under Rule 403, relevant evidence may be excluded when its probative value is "substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.  "We review a district court's balancing under Rule 403 for abuse of discretion."  *United States v. Polouizzi*, 564 F.3d 142, 152 (2d Cir. 2009).  "This deferential standard is of particular importance with regard to evidentiary rulings under Rule 403 because a district court is obviously in the best position to do the balancing mandated by Rule 403."  *United States v. Contorinis*, 692 F.3d 136, 144 (2d Cir. 2012) (alteration adopted) (internal quotation marks and citation omitted).  Thus, "so long as the district court has conscientiously balanced the proffered evidence's probative value with the risk for prejudice," its Rule 403 determination "will be disturbed only if it is arbitrary or irrational."  *United States v. Awadallah*, 436 F.3d 125, 131 (2d Cir. 2006).

At trial, the government sought to introduce into evidence the 911 call, arguing that it was probative because (1) the mother stated on the call that when she found Koenig "he was already ice cold," and therefore, as relevant to causation, the call countered any theory that she could have saved Koenig's life, and (2) the mother indicated that she believed her son died of a heroin overdose, which supported the government's theory that Koenig had recently relapsed into heroin use.  App'x at 272.  After hearing the parties on the issue and listening to the 911 call, the district court found the recording admissible, explaining that, while it understood "why the defense would

3

like to sanitize this record as much as they can," the 911 call provided a "chronology" for the events surrounding Koenig's death. App'x at 275.

The district court did not abuse its discretion here. On appeal, Thompson contends that because the government already had other evidence proving the same facts as the 911 call—namely, trial testimony from Koenig's mother that she found Koenig's cold body and trial testimony from the government's cooperating witness, Dana Mendez, that Koenig had begun using heroin again—the call "added absolutely nothing to the government's case" except "to inflame the jury." Appellant's Br. at 17. To be sure, in conducting the Rule 403 balancing, a district court should consider, *inter alia*, "the availability of other means of proof." *United States v. Dupree*, 706 F.3d 131, 138 (2d Cir. 2013). However, "the mere fact that two pieces of evidence might go to the same point [does] not, of course, necessarily mean that only one of them might come in." *Old Chief v. United States*, 519 U.S. 172, 183 (1997). As we have explained, in *Old Chief* the Supreme Court emphasized "the importance of allowing the prosecution to maintain the natural sequence of narrative evidence in presenting its case, to ameliorate the concern that people who hear a story interrupted by gaps of abstraction may be puzzled at the missing chapters." *United States v. Al-Moayad*, 545 F.3d 139, 161 (2d Cir. 2008) (alteration adopted) (internal quotation marks and citation omitted). Here, the call was a contemporaneous piece of evidence that supported the government's chronology and corroborated the testimony of the government's witnesses. The district court, after considered evaluation, acted well within its discretion in admitting the evidence based on "the offering party's need for evidentiary richness and narrative integrity in presenting [its] case." *Old Chief*, 519 U.S. at 183. In short, this is not one of those "extraordinarily compelling circumstances" where we will, "from the vista of a cold appellate record, reverse a district court's on-the-spot judgment concerning the relative weighing of

4

probative value and unfair effect." *United States v. Moran-Toala*, 726 F.3d 334, 346 (2d Cir. 2013) (internal quotation marks and citation omitted).

## II.     Sentencing

Thompson next argues that the district court committed procedural error in imposing its sentence because it relied on a material mistake of fact. Thompson also contends that the district court imposed a substantively unreasonable sentence. We are not persuaded by either argument.

We "review the procedural and substantive reasonableness of a sentence under a deferential abuse-of-discretion standard." *United States v. Yilmaz*, 910 F.3d 686, 688 (2d Cir. 2018) (per curiam). However, we apply plain error review to procedural-reasonableness challenges not raised in the district court. *See United States v. Alvarado*, 720 F.3d 153, 157 (2d Cir. 2013). To demonstrate plain error, a defendant must establish that "(1) there is an error; (2) the error is clear or obvious, rather than subject to reasonable dispute; (3) the error affected the [defendant]'s substantial rights; and (4) the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *United States v. Balde*, 943 F.3d 73, 96 (2d Cir. 2019) (internal quotation marks and citation omitted).

### A.  Procedural Reasonableness

Thompson argues that the district court procedurally erred by basing its sentencing decision on a factual error, namely, that he personally decided to sell the fatal dose of fentanyl-laced heroin to Koenig. *See United States v. Smith*, 949 F.3d 60, 66 (2d Cir. 2020) (holding that a sentence may be procedurally unreasonable if the district court "selects a sentence based on clearly erroneous facts" (internal quotation marks and citation omitted)). Because Thompson did not raise this procedural objection before the district court, we review for plain error. *United States v. Wagner-Dano*, 679 F.3d 83, 89 (2d Cir. 2012).

In imposing the sentence, the district court described the seriousness of Thompson's criminal conduct:

> [W]hat makes this case particularly tragic is the count that charged Mr. Thompson with selling drugs that killed [Koenig]. And what makes the defendant's conduct even more despicable and unforgiving is that he had sold [Koenig] drugs the previous week, drugs that [Koenig] overdosed on but survived after being revived by EMT[]s. The defendant knew this happened and yet sold him drugs again; the fatal dose one week later. . . . And [Koenig's] death didn't stop the defendant. He continued to sell lethal drugs, even after learning that his stash resulted in a fatal overdose.

App'x at 258–59. Thompson asserts that the district court's statement that he sold the second, fatal dose of drugs to Koenig was "not true other than in a technical sense." Appellant's Br. at 21. More specifically, although Thompson acknowledges that he "was legally responsible for the sale, . . . because [co-defendant] Dana Mendez, who sold Koenig the second dose of drugs, worked for him," Thompson notes that "*factually*, the sale was made entirely by Mendez" without his knowledge or permission. *Id*. (emphasis in original).

However, nothing in the record suggests that the sentencing judge, who had also presided over the trial and heard the extensive evidence regarding these drug transactions, had the misapprehension that Thompson, rather than Mendez, personally sold the fatal dose of fentanyl to Koenig.[1] Instead, when read in the context of the arguments of the parties and the entire sentencing

---

[1] We also note that the district court, at sentencing, indicated that it had reviewed the written sentencing submissions from both Thompson and the government, App'x at 233, which each made clear that Mendez (not Thompson) sold the drugs from Thompson's stash that resulted in Koenig's fatal overdose. *See, e.g.*, Thompson Sentencing Letter, *id*. at 224 ("[T]he decedent, Fredrick Koenig, a heroin addict, died when he injected heroin containing fentanyl that he purchased from co-defendant Dana Mendez, from which she, as the evidence at trial revealed, purchased from Mr. Thompson."); Gov't Sentencing Letter, *id*. at 227–28 ("In mid-December 2018, Freddy purchased what he believed to be heroin from Mendez. Mendez sold Freddy the drugs from her and the defendant's shared bedroom stash. Freddy overdosed from those drugs, but an ambulance came for him, and he survived. The trial testimony (from both Mendez and another drug dealer, Mack Driver) established that the defendant was well aware that Freddy had overdosed from the defendant's

6

record, it is reasonable to interpret the district court's comment as suggesting that Thompson's decision to continue his drug dealing operation (with Mendez) as usual, even after finding out about Koenig's first, non-fatal overdose, was tantamount from a culpability standpoint to Thompson's selling the drugs to Koenig again himself. That interpretation is further supported by the district court's reference to Thompson "continu[ing] to sell lethal drugs, even after learning that his stash resulted in a fatal overdose." App'x at 259. In other words, the district court's focus, when describing the seriousness of Thompson's offense conduct, was not on whether it was Thompson or Mendez who physically sold the drugs to Koenig that resulted in the fatal overdose, but rather on Thompson's decision to continue to sell drugs from his stash, with the assistance of Mendez, after Koenig's first overdose (which he survived) and after his fatal overdose. In short, it is not "clear or obvious" from the record that the district court relied on any factual error in imposing Thompson's sentence. *United States v. Marcus*, 560 U.S. 258, 262 (2010). Accordingly, we find unpersuasive Thompson's procedural challenge to his sentence.

## B. Substantive Reasonableness

Finally, Thompson challenges his 360-month sentence, which was at the bottom of his Guidelines range, as substantively unreasonable.

In applying the abuse of discretion standard to substantive reasonableness challenges, "we do not consider what weight we would ourselves have given a particular factor [at sentencing]. Rather, we consider whether the factor, as explained by the district court, can bear the weight

---

drugs. Yet a week later—on Christmas—when Freddy texted Mendez with the same order for 'food' (a code work for heroin), Mendez again went to her and the defendant's shared stash, packaged up the drugs, and sold them to Freddy. Mendez put Freddy's money in the drawer she and the defendant shared, as payment to the defendant for the drugs. A few hours later, Freddy overdosed on those drugs, which were later determined to be fentanyl, and this time, he died.").

assigned it under the totality of circumstances in the case." *United States v. Cavera*, 550 F.3d 180, 191 (2d Cir. 2008) (en banc) (citation omitted). A sentence is therefore substantively unreasonable only if "affirming it would damage the administration of justice because the sentence imposed was shockingly high, shockingly low, or otherwise unsupportable as a matter of law." *United States v. Park*, 758 F.3d 193, 200 (2d Cir. 2014) (internal quotation marks and citation omitted). Moreover, although there is no presumption that a sentence within the Guidelines range is reasonable, "in the overwhelming majority of cases, a Guidelines sentence will fall comfortably within the broad range of sentences that would be reasonable in the particular circumstances." *United States v. Fernandez*, 443 F.3d 19, 27 (2d Cir. 2006).

On this record, we conclude that the factors, under 18 U.S.C. § 3553(a), upon which the district court relied "can bear the weight assigned [them] under the totality of circumstances in the case," *Cavera*, 550 F.3d at 191, and the 360-month sentence, which was at the bottom of the advisory Guidelines range, was not "shockingly high . . . or otherwise unsupportable as a matter of law," *Park*, 758 F.3d at 200. The district court first emphasized that "the nature and circumstances of [Thompson's] crimes are the most serious and demand equally serious punishment." App'x at 259; *see* 18 U.S.C. § 3553(a)(1). It then pointed to Thompson's "lengthy criminal history for robbery and drug possession," that his "prior criminal interactions have not deterred [him]," and that he instead "chose, through [his] callous drug dealing, to be part of the opioid drug crisis that's endemic in our country today." *Id*. Further, the district court underscored the need for specific deterrence, highlighting that Thompson continued to sell drugs even after finding out about Koenig's overdose death. *See* App'x at 259–60; 18 U.S.C. § 3553(a)(2)(B). Thompson argues that the district court should have imposed a lower sentence based on his various mitigating circumstances—including his employment history, his own substance abuse, and the

8

conditions of his pretrial confinement.  However, given the overall reasonableness of the 360-month sentence, Thompson's disagreement with the district court's weighing of certain Section 3553(a) factors does not establish an abuse of discretion by the district court.  *See United States v. Davis*, 82 F.4th 190, 203 (2d Cir. 2023) ("[T]he weight to be afforded any sentencing factor is a matter firmly committed to the discretion of the sentencing judge and is beyond our review, so long as the sentence ultimately imposed is reasonable." (internal quotation marks and citation omitted)).  In sum, the district court's sentence was substantively reasonable.

*          *          *

We have considered Thompson's remaining arguments and conclude that they are without merit.  Accordingly, the judgment of the district court is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court