13-914-cr (L)
United States v. Veliz, Veliz-Novack

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 19th day of August, two thousand fifteen.

PRESENT: PIERRE N. LEVAL,
GERARD E. LYNCH,
RAYMOND J. LOHIER, JR.,
*Circuit Judges.*

_____

UNITED STATES OF AMERICA,
*Appellee*,

v.                                                          No.      13-914-cr;
13-953-cr

CRISTOBAL VELIZ,
NARCISA VELIZ NOVACK, also known as Narcy Novack,
*Defendants-Appellants*,

DENIS RAMIREZ, JOEL GONZALEZ,
*Defendants*.

_____

| | |
|---|---|
| APPEARING FOR APPELLANT CRISTOBAL VELIZ: | KATHERINE ALFIERI, Law Offices of K. Alfieri, Inc., New York, NY. |
| APPEARING FOR APPELLANT NARCISA VELIZ NOVACK: | YVONNE SHIVERS, Levitt & Kaizer, New York, NY. |
| APPEARING FOR APPELLEE: | ELLIOT B. JACOBSON, Assistant United States Attorney, (Andrew S. Dember, Brian A. Jacobs, Assistant United States Attorneys), *for* Preet |

Bharara, United States Attorney for the Southern District of New York, New York, NY.

Appeal from the United States District Court for the Southern District of New York (Kenneth M. Karas, *Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment of the district court is AFFIRMED.

Narcisa Veliz-Novack ("Novack") and her brother Cristobal Veliz ("Veliz") appeal from judgments of conviction entered by the district court following a two-month jury trial. The charges in the case related to violent attacks on Novack's husband, Ben Novack, and mother-in-law, Bernice Novack, that resulted in their deaths.[1] Appellants raise a host of challenges to their convictions and to their sentences of life imprisonment. Among those challenges, Veliz argues that his convictions for witness tampering must be vacated because his conduct did not violate the statute under which he was charged, 18 U.S.C. § 1512(b)(3), and because of an error in the district court's jury charge. We reject those arguments in an opinion issued simultaneously with this summary order. See –

---

[1] Both Novack and Veliz were convicted of one count of racketeering, in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c); one count of RICO conspiracy, 18 U.S.C. § 1962(d); four counts of violent crime in aid of racketeering, 18 U.S.C. §§ 1959(a)(2), (a)(3), (a)(6); one count of conspiracy to commit domestic violence and stalking, 18 U.S.C. § 371; one count of interstate domestic violence, 18 U.S.C. § 2261(a)(1); and one count of interstate stalking, 18 U.S.C. § 2261A(1). Novack was also convicted of one count of interstate transportation of stolen property, 18 U.S.C. § 2314, and two counts of money laundering, 18 U.S.C. § 1957(a); Veliz was also convicted of two counts of witness tampering, 18 U.S.C. § 1512(b)(3). Both were acquitted of a violent crime in aid of racketeering for the murder of Ben Novack, and the corresponding racketeering act of the felony murder of Ben Novack was found not proven.

2

F.3d –, No. 13-914-cr, 13-953-cr (2d Cir., Aug. 19, 2015). We assume the parties' familiarity with the facts and procedural history.

1. Competence to Stand Trial

Both Novack and Veliz argue, for the first time on appeal, that they were denied due process by the district court's failure sua sponte to order a competency hearing. Notably, none of the experienced lawyers who represented the defendants before, during or after trial, nor the veteran prosecutors who presented the case, ever raised any question as to either defendant's competence to stand trial. See United States v. Kirsh, 54 F.3d 1062, 1071 (2d Cir. 1995) (noting that defense counsel's failure to indicate that defendant could not assist in her defense or understand proceedings was "substantial evidence" of competency).

A district court must order a competency hearing "if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." 18 U.S.C. § 4241(a). "[T]he determination of whether there is reasonable cause to believe a defendant may be incompetent rests in the discretion of the district court." United States v. Nichols, 56 F.3d 403, 414 (2d Cir. 1995) (internal quotation marks and alterations omitted). Accordingly, we normally review a district court's decision not to order a competency hearing for abuse of discretion. United States v. Arenburg, 605 F.3d 164, 169 (2d Cir.2010). The government argues that appellants'

3

claims should be reviewed for plain error because they were not raised below. We need not address that argument because the claims fail under either plain error or abuse of discretion review.

### a. Novack

As evidence of reasonable cause to doubt her competency, Novack primarily points to a number of outbursts and other actions during trial. For example, during the testimony of a cooperating witness, Novack wept and exclaimed, "why are you doing this to me, I'm innocent, why don't you arrest that man?" Trial Tr. 1553. Similarly, during the trial Novack gave phone interviews to the press from her jail cell professing her innocence. She also insisted on wearing an orange prison jumpsuit to trial, because, she explained, "The world needs to know what has happened to this widow." Novack Br. 80.

Such behavior is more indicative of a misguided attempt to manipulate the process than of any incompetency. Proclaiming one's innocence and attempting to garner the jury's sympathy hardly suggests an inability "to understand the nature and consequences of the proceedings." 18 U.S.C. § 4241(a). Given a more plausible explanation than incompetency, we will not fault the district court – which had the opportunity to observe Novack for months – for not questioning Novack's competence.

### b. Veliz

Veliz, unlike Novack, elected to testify at trial, and his incompetency claim focuses primarily on the content of that testimony. He essentially argues that his testimony was so transparently false that it can only be explained by "debilitating

4

delusions." Veliz Br. 35. But Veliz's testimony, while unconvincing and outlandish, was fully consistent with a calculated attempt to exonerate himself. Veliz's primary story was that he was abducted and held hostage by May Abad, Novack's daughter from a previous marriage. That account – which Veliz aptly describes on appeal as full of "logical implausibilities," Veliz Br. 18 – aligned with appellants' principal defense at trial that Abad was the true orchestrator of the murders. That Veliz's perjury may have been uniquely brazen does not render him incompetent to stand trial. Veliz also points to his persistent claims that he was not traveling with Ben Novack's assailants days before the attack on Ben Novack, despite video evidence to the contrary. But conceding that point would not only have tied him to the attack, but would also have undermined his alibi that he was at work in another state at that time. Lastly, while Veliz contends that his testimony revealed an inability to answer questions coherently, this problem appears conveniently to have manifested itself only during the government's cross-examination.

We are likewise unpersuaded by Veliz's attempts to bolster his incompetency claim with the government's statement that he was "far from [a] rational human being[]," Trial Tr. 4965, and the district court's remarks that Veliz's lawyers could not change "reality" and that it had "never seen anything like" Veliz's perjury, J.A. 439. That someone who committed such horrendous crimes may be described as irrational does not demonstrate incompetency. Even in the case of mental illness, "[t]he mental illness must deprive the defendant of the ability to consult with his lawyer with a reasonable degree of rational understanding and to understand the proceedings against him rationally as well as

5

factually." Nichols, 56 F.3d at 412 (internal quotation marks omitted). The district court cannot be faulted for not questioning that Veliz had that ability.

2. Association-in-Fact Enterprise – Sufficiency of the Evidence

The indictment alleged that appellants were part of an association-in-fact enterprise whose purposes included: (i) "assaulting . . . and otherwise physically incapacitating" Ben and Bernice Novack; (ii) "enriching the leaders, members, and associates of the enterprise" through numerous crimes; and (iii) "preserving the financial profits of the enterprise through money laundering" and witness tampering. J.A. 62-63. Veliz argues that the evidence was insufficient to show each of the "three structural features" of an association-in-fact enterprise: "a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." Boyle v. United States, 556 U.S. 938, 946 (2009).

We analyze the sufficiency of the evidence "in the light most favorable to the government, crediting every inference that could have been drawn in the government's favor, and deferring to the jury's assessment of witness credibility and its assessment of the weight of the evidence," United States v. Chavez, 549 F.3d 119, 124 (2d Cir.2008) (internal quotation marks, citations, and alterations omitted), and conclude that there was sufficient evidence that the members of the enterprise shared a common purpose of pursuing financial gain. Cooperating witnesses testified that Veliz explained that the Ben Novack attack was orchestrated so that Novack could seize control of his business and finances and that, shortly after the attack on Bernice Novack, Veliz received thousands of

6

dollars in cash from a woman the jury could find was Novack.  The government also introduced the wills of Bernice and Ben Novack, under which Novack stood to inherit millions of dollars.  Moreover, the predicate act of interstate transportation of stolen property and money laundering – found proven as to both appellants as part of the RICO conspiracy charge – was a purely financial crime that cannot plausibly be explained by appellants' professed motive of personal hatred.

We also reject appellants' argument that there was insufficient evidence of a relationship among the enterprise's members with sufficient longevity because "the only ongoing members of this alleged enterprise were [appellants themselves]."  Veliz Br. 67.  Even assuming that Veliz and Novack alone could not constitute an association-in-fact, the factual premise of their argument fails.  Two of the members, Alejandro Garcia and Francisco Picado, were involved in the attacks on both Bernice and Ben Novack.  Another, Melvin Medrano, was involved in the Bernice Novack attack and also agreed with Veliz to make Garcia "disappear" to prevent his cooperation with law enforcement.  Trial Tr. 1873-74.  Their repeated and overlapping participation in the pattern of racketeering activity defeats appellants' contention that the other members' involvement was too isolated to form an association-in-fact.  See United States v. Payne, 591 F.3d 46, 60-61 (2d Cir. 2010) (finding relationship among defendants sufficient to constitute association-in-fact enterprise).

7

### 3. Continuity Jury Instruction

To prove a RICO violation, the government must establish a "pattern of racketeering activity" consisting of related predicate acts that "either amount to or pose a threat of continuing criminal activity," Spool v. World Child Int'l Adoption Agency, 520 F.3d 178, 183 (2d Cir. 2008) (alteration omitted), which may be proved by showing either "a closed period of repeated conduct, or . . . past conduct that by its nature projects into the future with a threat of repetition," H.J. Inc. v. Nw. Bell Tel. Co., 492 U.S. 229, 241 (1989). Closed-ended continuity requires predicate acts "extending over a substantial period of time[;] . . . a few weeks or months" are insufficient. Cofacredit, S.A. v. Windsor Plumbing Supply Co., 187 F.3d 229, 242 (2d Cir. 1999). Appellants argue that the district court erred by instructing the jury on closed-ended continuity because "the 11-12 month predicate act span alleged in this case cannot constitute closed-ended continuity as a matter of law." Veliz Br. 82. Relatedly, they argue that the district court erred in not instructing the jury that for closed-ended continuity a "substantial period of time" must be at least two years, citing our statement in Cofacredit that "[s]ince the Supreme Court decided H.J., Inc., this Court has never held a period of less than two years to constitute a 'substantial period of time.'" 187 F.3d at 242.

That we have not held a period of less than two years to be sufficient does not mean that such a period is insufficient as a matter of law. Indeed, we have explained that "we have not viewed two years as a bright-line requirement" for closed-ended continuity. Spool, 520 F.3d at 184. To be sure, we have noted that "it will be rare that conduct

8

persisting for a shorter period of time establishes closed-ended continuity." Id. But that such cases are rare does not mean that the district court erred in submitting the theory of closed-ended continuity to the jury, or in not instructing the jury on a definition of "substantial period of time" that we have never articulated.

4. Novack's Felony Murder of Bernice Novack – Sufficiency of Evidence

Novack challenges the sufficiency of the evidence that she committed the racketeering act of the felony murder of Bernice Novack. The indictment alleged, and the jury specifically found, that Novack committed this felony murder by engaging in three predicate felonies under Florida law: (1) aggravated abuse of an elderly person, (2) aggravated battery on a person 65 years or older, and (3) burglary. Novack argues that there was insufficient evidence to find that Bernice Novack was an "elderly person" as defined by Florida law. We need not resolve that question because Novack does not challenge the other two underlying felonies and, as she concedes, "the government was required to prove [only] one of the three theories of the felony murder." Novack Br. 74.

Novack also argues that, regardless of the underlying felony, there was insufficient evidence of her involvement in the murder of Bernice Novack. That argument fails. There was ample evidence – including testimony from cooperating witnesses that Veliz told them that Novack ordered the attack, corroborating cell phone records, and testimony that after the attack, a woman that the jury could have found was Novack gave Veliz thousands of dollars – to permit the jury to conclude that Novack participated in the crime.

9

### 5. Felony Murder of Bernice Novack as Racketeering Activity

Appellants next argue that there was insufficient evidence that the attack on Bernice Novack was part of a pattern of racketeering activity, because it was motivated by personal animosity, not by the enterprise's alleged aims of enriching its members and preserving its profits. Appellants contend that a pecuniary purpose could explain the attack only if appellants intended to *kill* Bernice Novack, but that her assailant, Alejandro Garcia, testified that Veliz instructed him only to "give her a good beating and to knock off [sic] her teeth." Trial Tr. 870. Despite Garcia's testimony, a jury could reasonably conclude that appellants intended to kill Bernice Novack, or at least to accelerate her death. After Bernice Novack was found dead, Veliz did not complain that Garcia had not followed instructions, but rather told him he had done a "good job." Id. 871. Veliz and Novack then not only proceeded with their plan to attack Ben Novack, but again hired Garcia to carry it out – a puzzling choice had Garcia exceeded appellants' intended result. Moreover, the jury could infer that, in ordering an 86-year-old woman severely assaulted, appellants intended to shorten significantly her life expectancy, if not to cause her immediate death. Thus, a rational trier of fact could conclude that the attack on Bernice Novack was motivated by financial gain and was part of a pattern of racketeering activity.

### 6. Interstate Transportation of Stolen Property – Sufficiency of Evidence

Novack argues that her taking approximately $95,000 from her husband's business, Novack Enterprises, after his death, depositing it in an account they had jointly held, and then dispersing it among her lawyers and a relative cannot support her

10

conviction for interstate transportation of stolen property. First, she argues that because Ben Novack would have had the legal right to deposit his company's proceeds in the joint account, it follows that she did as well. That argument is unavailing. Because Novack knew that her husband had been murdered, she knew that the account was no longer "joint" at the time she deposited the funds. Moreover, Novack distorts the issue by treating the deposit in isolation. She did not merely deposit the funds for safe keeping – she withdrew them days later for personal use in a manner that concealed their source.

Second, Novack argues that the funds were not stolen because "at the time she made the deposit there were no 'creditors' with claims against the estate," since Novack Enterprises had yet to file for bankruptcy. Novack Br. 90. We reject that argument because those to whom Novack Enterprises owed money were its creditors even before the company filed for bankruptcy. Cf. 11 U.S.C. § 101 (10) (defining a "creditor," in part, as an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor"). Because Novack was properly convicted of interstate transportation of stolen property, we likewise reject her argument that this conviction cannot establish that the funds were "criminally derived property" for purposes of her money laundering conviction. See 18 U.S.C. § 1957.

7. Domestic Violence and Stalking – Jury Instruction

Novack challenges her convictions for domestic violence, stalking, and conspiracy to commit those offenses. The district court instructed the jury that to convict on those counts it must find that appellants "traveled in interstate commerce with the intent to kill,

11

injure, harass, or intimidate Ben Novack." Trial Tr. 5088. Novack argues that these instructions erroneously permitted the jury to convict based on a finding that she intended to kill Ben Novack, when "there was no factual predicate for [such a] finding" because the "government's theory and proof were that [her] intention was not to kill [Ben] Novack, but rather to assault him." Novack Br. 102 (emphasis omitted).[2]

Although the government crafted the indictment to avoid requiring a finding of intentional murder to support conviction, its theory of the case nevertheless encompassed Novack's intent to kill Ben Novack. The domestic violence and stalking counts expressly alleged that Novack intended, inter alia, to kill Ben Novack. Contrary to Novack's assertion, the government argued that theory repeatedly at trial. See, e.g., Trial Tr. 4946-47. Indeed, Novack contends in other portions of her brief that the government argued at trial that she intended to kill Ben Novack without charging her with intent to kill. Novack's challenge therefore fails – although the murder predicate acts were drafted to permit a racketeering conviction on theories of non-intentional murder, the indictment alleged, and the government argued at trial, that Novack intended to kill Ben Novack.

To the extent Novack challenges the sufficiency of the evidence for such intent, that argument also fails. The government presented Novack's inheritance as a credible motive for her to want her husband dead, rather than simply maimed. Appellants proceeded with the attack on Ben Novack after the attack on Bernice Novack – whom

---

[2] Because Novack did not object to the jury instruction below, we review her claim for plain error. United States v. Khan, 53 F.3d 507, 516 (2d Cir. 1995).

12

appellants also contend they sought only to have assaulted – proved fatal. Moreover, Novack personally directed and assisted her husband's assailants as they bludgeoned him to death, instructing them to cut out her husband's eyes, and handing one assailant a pillow to muffle his screams. That evidence, in the context of Novack's pattern of criminal activity, was sufficient to permit an inference that she intended her husband's death. Moreover, even if it were not, we would affirm because the evidence indisputably permitted the jury to convict based on a finding of intent to "injure." See Griffin v. United States, 502 U.S. 46, 56-57 (1991) ("[W]hen a jury returns a guilty verdict on an indictment charging several acts in the conjunctive, . . . the verdict stands if the evidence is sufficient with respect to any one of the acts charged.") (internal quotation marks omitted).

        8. Due Process Claim & Related Evidentiary Challenges

        Novack argues that she was denied due process and a fair trial because the "government on the one hand theorized that [she] did not intend the deaths of Bernice and Ben Novack, and so charged her, but on the other hand purposely elicited evidence, and argued in summation, that [she] intended their deaths." Novack Br. 107. But as discussed above, although the indictment was structured to permit a racketeering conviction without a finding of intent to kill, the government consistently argued that Novack had such an intention, which in fact was charged in connection with some of the counts in the indictment. The government's arguing at trial for a motive for the attacks that was alleged in the indictment and was relevant to prove some of the charges did not

13

deprive Novack of due process and a fair trial.

Relatedly, Novack raises a number of evidentiary challenges, contending that evidence supporting her motive to kill Bernice and Ben Novack was prejudicial and "irrelevant to any charge in the indictment," and therefore inadmissible.[3] Novack Br. 109. Because appellants did not assert below that this evidence was unfairly prejudicial, we review for plain error. Fed. R. Crim. P. 52(b); United States v. Edwards, 342 F.3d 168, 179 (2d Cir. 2003).

Contrary to Novack's argument, all of this evidence was relevant because it provided a motive for the charged pattern of criminal conduct. "[E]vidence of motive . . . is a factor that a jury may weigh in considering whether the totality of the circumstances permits it to infer . . . intent beyond a reasonable doubt." United States v. MacPherson, 424 F.3d 183, 185 n.2 (2d Cir. 2005). The evidence was harmful to Novack only in that it tended to prove that she committed crimes alleged in the indictment. "[E]vidence is unduly prejudicial only when it tends to have some adverse effect upon a defendant beyond tending to prove the fact or issue that justified its admission into evidence." United States v. Kadir, 718 F.3d 115, 122 (2d Cir. 2013) (internal quotation marks,

---

[3] Specifically, Novack challenges evidence proving the contents of Bernice and Ben Novack's wills; testimony by a property manager of an apartment Ben Novack rented for his mistress that, months before Ben Novack's death, Novack had told her that he would no longer be paying the rent because he was dead; and the testimony of a bank employee that, nearly a month after Ben Novack's death, Novack accessed three safe deposit boxes belonging to Ben and Bernice Novack, and when confronted, Novack told the employee that her husband was at home and would return to the bank that day to grant Novack access to the safe deposit boxes.

14

alterations, and emphasis omitted).[4]

9. Preserved Evidentiary Challenges

Appellants raise two additional evidentiary challenges that were properly preserved below. First, the district court excluded as hearsay Veliz's testimony that Abad threatened him and stated that Ben Novack "got what he deserved." Trial Tr. 3798. Second, the district court, under the hearsay exception for evidence of future intent, admitted testimony that Ben Novack planned to hand over to Abad the operations of Novack Enterprises. We review these rulings for abuse of discretion, United States v. Persico, 645 F.3d 85, 99 (2d Cir. 2011), and harmless error, United States v. Mercado, 573 F.3d 138, 141 (2d Cir. 2009); see also Fed. R. Crim. P. 52(a). An "error is harmless if we can conclude that that testimony was unimportant in relation to everything else the jury considered on the issue in question, as revealed in the record." United States v. Rea, 958 F.2d 1206, 1220 (2d Cir. 1992) (internal quotation marks omitted).

a. Veliz Testimony

Veliz testified that he was abducted and held hostage by Abad, who appellants argued at trial was the true killer of Ben and Bernice Novack. The district court excluded Veliz's testimony regarding Abad's alleged statements to him on the ground that it was hearsay offered for the truth of the matter asserted – namely, that May Abad orchestrated

---

[4] Because we find no plain error, we need not address the government's argument that appellants waived their objection by tactically deciding to permit admission of the wills, so that they could argue that the wills provided May Abad with a motive to kill the victims. See United States v. Coonan, 938 F.2d 1553, 1561 (2d Cir. 1991).

the killing of Ben Novack – rather than to show Veliz's state of mind in not reporting his abduction to the police. See Fed. R. Evid. 801(c), 803(3).

To the extent that Abad's statement that Ben Novack "got what he deserved" could be construed as Abad's confession that she killed Ben Novack, it was hearsay unless exempt as an admission against interest under Rule 804(b)(3). The district court properly ruled that it did not qualify under that exemption for lack of corroborating circumstances. To the extent that the statement might have served the non-hearsay purpose of showing Abad's state of mind in response to Ben Novack's death, Veliz never argued that Abad's statements were admissible for that purpose. Rather, he contended only that Abad's statements were admissible to show *his* state of mind in not reporting his abduction.

Finally, to the extent that the excluded statement included Abad's threat against Veliz, the testimony was not hearsay, see United States v. Stratton, 779 F.2d 820, 830 (2d Cir. 1985), and was arguably relevant to explain why Veliz did not report his kidnapping to the police. But "the mere identification of a relevant non-hearsay use of such evidence is insufficient to justify its admission if the jury is likely to consider the statement for the truth of what was stated with significant resultant prejudice." United States v. Reyes, 18 F.3d 65, 70 (2d Cir. 1994). The district court found such a situation here, concluding that the testimony's probative value in explaining Veliz's conduct was substantially outweighed by the risk that the jury would improperly consider the testimony as evidence that Abad confessed to killing Ben Novack. The district court did not abuse its discretion in excluding the testimony rather than giving a limiting instruction. As the district court

16

noted, Abad's role (or lack thereof) in the killings was "obviously a central issue in the case." Trial Tr. 3799. Moreover, in light of Veliz's testimony that Abad had abducted him, the excluded testimony was hardly needed to explain why he was frightened of her.

### b. Furano Testimony

Angelica Furano, an event coordinator at the hotel where Ben Novack was killed, testified that shortly before his death Ben Novack told her that "he was looking forward to retiring . . . and letting May [Abad] . . . do more of the onsite work." Trial Tr. 2012. That testimony was admitted under Federal Rule of Evidence 803(3), which provides a hearsay exception for statements of future intent. Appellants contend that Furano's testimony was offered to show that Novack acted in accordance with her knowledge of Ben Novack's intent by killing him before he could turn over his business. The testimony was therefore inadmissible, appellants argue, because there was no independent evidence showing that Ben Novack was acting on this intent or that Novack was aware of his intent.[5]

We need not decide whether Furano's testimony was properly admitted, because any error was clearly harmless. The government appears to have elicited this testimony

---

[5] Under Rule 803(3), "if relevant, a declarant's statement of his intent may be introduced to prove that the declarant thereafter acted in accordance with the stated intent." Persico, 645 F.3d at 100 (internal quotation marks and alterations omitted); see also Mutual Life Ins. Co. v. Hillmon, 145 U.S. 285, 299-300 (1892). "A declarant's statement of intent may also be admitted against a non-declarant when there is independent evidence which connects the declarant's statement with the non-declarant's activities." United States v. Delvecchio, 816 F.2d 859, 863 (2d Cir. 1987); see also Persico, 645 F.3d at 100-01.

17

not to establish a motive for Novack, but to refute a motive for Abad. In its summation, the government referenced Furano's testimony to argue that "Abad had every reason to see [Ben Novack] [a]live." Trial Tr. 4946-47. Conversely, appellants point to no argument by the government at trial that Novack was aware of Ben Novack's intent, or that her knowledge of any such intent motivated her to kill him. The evidence of appellants' involvement in the killing of Ben Novack was overwhelming, while the evidence of Abad's involvement was virtually nonexistent. That renders any error harmless, as it is "highly probable that [the disputed evidence] did not contribute to the verdict." United States v. Kaiser, 609 F.3d 556, 573 (2d Cir. 2010) (internal quotation marks omitted).

10. Rule 32 Sentencing Issues

Veliz argues that the district court failed to comply with Federal Rule of Criminal Procedure 32 in two respects: by not inquiring whether he had reviewed his presentence report ("PSR") and by failing to rule on his challenges to the PSR.

The district court's failure to ask whether Veliz and his attorney had reviewed the PSR does not mandate resentencing. Rule 32(i)(1)(A) provides that at sentencing a district court "must verify that the defendant and the defendant's attorney have read and discussed the [PSR] and any addendum to the report." While "direct questioning . . . is indeed the better practice, . . . it is not required." United States v. Cortez, 841 F.2d 456, 460 (2d Cir. 1988) (internal quotation marks omitted. "Here, counsel's objections to certain aspects of the [PSR] . . . indicated a familiarity with the report and could, in the

18

context of these proceedings, have created a reasonable inference that counsel had discussed the report with his client." Id. at 461. We are especially unlikely to disturb such an inference where, as here, the appellant "has never seriously contended before this Court that he has not seen the [PSR]." Id. We note, however, that the "simple practice" of direct questioning "will avoid unnecessary challenges and help ensure fairness in the sentencing procedure." United States v. DeLeon, 704 F.3d 189, 196 (1st Cir. 2013).

Rule 32(i)(3)(B) provides that a district court "must – for any disputed portion of the [PSR] or other controverted matter – rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing." Prior to sentencing, Veliz's counsel objected to portions of the PSR, arguing primarily that the report's "Background" section included irrelevant post-verdict statements among its allegations of perjury by Veliz. The district court adopted the PSR in its entirety without explicitly addressing those objections, and Veliz's counsel did not raise them again.

"We review only for plain error where, as here, an appellant asserts that the district court neglected to address an objection to the PSR in violation of Rule 32(i)(3)(B), but that appellant failed to alert the district court of this procedural issue after the district court made its findings or pronounced its sentence." United States v. Wagner-Dano, 679 F.3d 83, 90 (2d Cir. 2012). Veliz's challenge cannot meet this standard. A plain error is one that, inter alia, "affected the appellant's substantial rights, which in the ordinary case means it affected the outcome of the district court proceedings." United States v. Marcus,

19

560 U.S. 258, 262 (2010) (internal quotation marks omitted). There is no prospect that any resolution of Veliz's objections could have affected his sentence, given the severity of his crimes and the district court's emphatic finding Veliz had committed perjury during the trial.[6]

## 11. Sentencing – Finding of Intent to Kill

Novack contends that the district court erred at sentencing in finding that she had "organized the murder" of Ben and Bernice Novack. J.A. 430. She repeats her argument that the government's theory of the case and the evidence at trial showed only an intent to maim Ben and Bernice Novack. As discussed above, the government presented evidence and argued at trial that Novack intended to kill Ben and Bernice Novack. The evidence was sufficient for the district court to find intent to kill by a preponderance of the evidence. See United States v. Juwa, 508 F.3d 694, 701 (2d Cir. 2007) (noting that "facts relevant to sentencing must be found by a preponderance of the evidence"). Moreover, "[a] sentencing court is not limited to considering only evidence of the convicted offense; it may take into account other relevant conduct . . . and even acquitted conduct." Id. at 700. Novack's argument is therefore meritless.

---

[6] We therefore need not decide whether the district court adequately addressed Veliz's objections by adopting the PSR. See Wagner-Dano, 679 F.3d at 90 (contrasting objections that "directly dispute[] the PSR's statement of the facts," which may be "resolved by the district court's decision to adopt as findings the factual information in the PSR," with objections that "attempt[] to clarify [the defendant's] motives or provide context for the PSR's facts," which "the district court's adoption of the PSR may not have disposed of").

### 12. Veliz's *Pro Se* Arguments

Veliz raises a number of non-meritorious arguments in a supplemental *pro se* brief. His assertion that he was arrested without a warrant or indictment is mistaken, as he was indicted the day before his arrest. His argument that the Southern District of New York lacked jurisdiction over him is likewise mistaken, because "[t]he district courts of the United States . . . have original jurisdiction . . . of all offenses against the laws of the United States," 18 U.S.C. § 3231, and venue was proper because each of the crimes charged was committed, at least in part, within that district, Fed. R. Crim. P. 18. Veliz's argument that the district court erred in denying his motion to proceed pro se fails because the record shows that Veliz in effect withdrew the motion and elected instead to have the court appoint a new attorney. The district court did not abuse its discretion in denying a bill of particulars because Veliz "was adequately informed of the charges against him and was not unfairly surprised at trial as a consequence of the denial." United States v. Torres, 901 F.2d 205, 234 (2d Cir. 1990). The district court did not err in refusing to suppress certain statements and physical evidence against Veliz, as its factual findings that Veliz had been read his Miranda warnings and that the physical evidence was in plain sight were not clearly erroneous. See United States v. Stewart, 551 F.3d 187, 190 (2d Cir. 2009) (reviewing fact findings in suppression ruling for clear error). Veliz fails to identify any of the prior convictions or other bad acts with which he asserts the government impeached him in violation of Fed. R. Evid. 404(b). Veliz's claim that the court erred in admitting the perjured testimony of ten different government witnesses fails

because Veliz has not shown that "the witness[es] actually committed perjury." United States v. Cromitie, 727 F.3d 194, 221 (2d Cir. 2013).

We decline to consider on the record before us Veliz's pro se claim of ineffective assistance of counsel. See Massaro v. United States, 538 U.S. 500, 504-05 (2003) (explaining that "in most cases a motion brought under § 2255 is preferable to direct appeal for deciding claims of ineffective assistance" because the district court is "best suited to developing the facts necessary to determining the adequacy of representation during an entire trial"). Accordingly, we reject that claim on direct appeal without prejudice to Veliz's right to pursue it in a collateral proceeding.

We have considered all of appellants' remaining arguments and find them to be without merit. For the reasons provided herein and in the opinion issued simultaneously with this summary order, the judgment of the district court is AFFIRMED.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, Clerk of Court