# United States Court of Appeals
### For the Eighth Circuit

———————————————————

No. 18-2681

———————————————————

United States of America,

*Plaintiff - Appellee,*

v.

Jerell Haynie, also known as Bottie, also known as "T",

*Defendant - Appellant.*

——————————

Appeal from United States District Court
for the District of Nebraska - Omaha

——————————

Submitted: March 17, 2021
Filed: August 11, 2021

——————————

Before COLLOTON, GRUENDER, and GRASZ, Circuit Judges.

——————————

COLLOTON, Circuit Judge.

A jury convicted Jerell Haynie of a conspiracy under the Racketeer Influenced and Corrupt Organizations Act ("RICO") based on his involvement with the Crips street gang. The district court sentenced Haynie to 84 months' imprisonment. On appeal, Haynie argues that an error in the jury instructions requires a new trial. If the

conviction is sustained, then he challenges the sentence imposed. We affirm the conviction, vacate the sentence, and remand for resentencing.

## I.

The Crips are a street gang known for their violent rivalry with another gang, the Bloods. The Crips are organized into smaller groups called "sets" or "cliques." Haynie was a member of the 40th Avenue Crips, one of several cliques in Omaha.

In June 2017, a grand jury returned an indictment against Haynie, alleging that he committed crimes as part of his involvement with the Crips. At the time, Haynie was imprisoned in Nebraska after convictions for three controlled substance offenses under state law.

Count I of the indictment charged Haynie with conspiring to violate RICO through a "pattern of racketeering activity" as part of an "enterprise," the Crips gang. *See* 18 U.S.C. § 1962(c), (d). A "pattern of racketeering activity" consists of "at least two acts of racketeering activity." *Id.* § 1961(5). Racketeering activity includes several federal and state offenses that are often described as RICO predicate offenses. *See id.* § 1961(1). Count I alleged that Haynie and his co-conspirators each committed at least two racketeering acts in furtherance of the conspiracy. Haynie's alleged acts included the distribution of crack cocaine, and attempts to shoot fellow Crips gang members whom Haynie believed were cooperating with law enforcement.

The indictment also charged Haynie with three counts related to the alleged attempted shooting of a fellow gang member. Count II charged attempted murder in aid of racketeering, *see id.* § 1959(a)(5), Count III charged attempted assault with a dangerous weapon in aid of racketeering, *see id.* § 1959(a)(6), and Count IV charged brandishing and discharging a firearm during a crime of violence. *See id.* § 924(c)(1)(A)(ii), (iii).

Haynie proceeded to trial in February 2018. The jury found him guilty of the conspiracy charged in Count I, but acquitted him on the other three counts. At sentencing, the district court calculated an advisory guideline range of 77 to 96 months' imprisonment, and sentenced Haynie to an 84-month term, to be served concurrently with any remaining term of imprisonment in state custody.

II.

Haynie first contends that his conviction on Count I should be reversed because the district court erred in instructing the jury. We review a district court's formulation of the jury instructions for abuse of discretion, and its interpretation the law *de novo*. *United States v. Thetford*, 806 F.3d 442, 446 (8th Cir. 2015).

Haynie contends that the instructions erroneously provided that an attempt to commit a state offense could qualify as racketeering activity. Instruction No. 35 listed "criminal attempt" as an act of racketeering that could constitute part of a "pattern of racketeering activity." R. Doc. 628, at 8. Instruction No. 37 then explained that the Nebraska crime of criminal attempt was charged as a type of racketeering activity. Haynie maintains that an attempt to commit an offense under state law cannot be an act of racketeering that contributes to a pattern of racketeering activity.

Racketeering activity includes "any act or threat *involving*" one of nine generic crimes, such as murder or dealing in a controlled substance, that "is chargeable under State law and punishable by imprisonment for more than one year." 18 U.S.C. § 1961(1)(A) (emphasis added). Subsections (A) and (D) of § 1961(1) use the term "involving," and are thus broader in scope than subsections (B), (C), and (E), which list offenses indictable under specific provisions of the criminal code. *United States v. Weisman*, 624 F.2d 1118, 1123-24 (2d Cir. 1980). We have understood the word "involving" to have an expansive connotation that extends to acts that are "related to

-3-

or connected with" an enumerated offense. *United States v. Bynum*, 669 F.3d 880, 886 (8th Cir. 2012) (internal quotation omitted). An attempted sale of drugs, for example, is an offense "involving" the distribution of drugs under the Armed Career Criminal Act, 18 U.S.C. § 924(e). *United States v. Coleman*, 700 F.3d 329, 339 (8th Cir. 2012). In the context of RICO, this court and other circuits uniformly have held that inchoate offenses of attempt and conspiracy to commit an enumerated offense that would be racketeering activity require an act "involving" the enumerated offense. *United States v. Darden*, 70 F.3d 1507, 1525 (8th Cir. 1995); *see United States v. Rodriguez*, 971 F.3d 1005, 1013-14 (9th Cir. 2020); *United States v. Warneke*, 310 F.3d 542, 546-47 (7th Cir. 2002); *United States v. Echeverri*, 854 F.2d 638, 648-49 (3d Cir. 1988); *United States v. Manzella*, 782 F.2d 533, 537-38 (5th Cir. 1986); *United States v. Ruggiero*, 726 F.2d 913, 918-19 (2d Cir. 1984). The district court thus did not err in instructing the jury that Haynie's attempts to commit state-law crimes could serve as RICO predicate offenses.

Haynie also maintains, however, that the court erroneously instructed the jury that Count III, which charged him with attempted assault with a dangerous weapon, could serve as a predicate act of racketeering. He cites Instruction No. 35, which addressed "pattern of racketeering activity" for purposes of the conspiracy charged in Count I. The instruction stated that to find a pattern of racketeering activity, the jury must find that Haynie

> agreed that some member or members of the conspiracy would commit at least two acts of racketeering within ten years of each other, such as the acts charged as separate crimes in Counts II and III of the Second Superseding Indictment, as instructed in Instruction No. 15A to Instruction No. 18, or the crimes of murder, criminal attempt, tampering with a witness, victim, or informant, distribution of controlled substances, or conspiracy to distribute controlled substances, as instructed in Instruction No. 36 to Instruction No. 40.

R. Doc. 628, at 8. The government concedes the reference to Count III was a mistake, because assault with a dangerous weapon—the offense charged in Count III—is not an act of racketeering under § 1961(1)(A).

Haynie did not object to the instruction in the district court, so we review only for plain error. *See* Fed. R. Crim. P. 52(b). To obtain relief, Haynie must show an obvious error that affected his substantial rights and seriously affected the fairness, integrity, or public reputation of judicial proceedings. *United States v. Olano*, 507 U.S. 725, 732-35 (1993).

When evaluating a challenge to jury instructions, we do not view each instruction in artificial isolation, but consider any disputed instruction in the context of the overall charge to the jury. We then assess whether there is a "reasonable likelihood" that the jury instructions, taken as a whole, misled the jury to convict the defendant based on an incorrect standard. *Boyde v. California*, 494 U.S. 370, 378-80 (1990); *United States v. Winn*, 628 F.3d 432, 438 (8th Cir. 2010). On plain error review, therefore, Haynie must show that the reasonable likelihood of misleading the jury was "obvious." If that prong is satisfied, then he must show a reasonable probability that the error affected the outcome of the trial.

On the question of error, the jury instructions were internally inconsistent on the definition of racketeering activity. Instruction No. 12, entitled "Nature of the Offenses," explained that Count I alleged a pattern of racketeering activity that encompassed several crimes, but did *not* list assault with a dangerous weapon. R. Doc. 627, at 15. Instruction No. 13 defined "racketeering activity" to mean any act or threat involving a series of enumerated offenses, such as murder and distribution of controlled substances, but did *not* mention assault with a dangerous weapon. *Id.* at 17.

-5-

Instruction No. 35 on "pattern of racketeering activities" then included the errant reference to the crime charged in Count III (assault with a dangerous weapon) as an act of racketeering. The next five instructions were entitled "Pattern of Racketeering Activity," and each addressed a separate act of racketeering enumerated in Instruction No. 35—first degree murder (No. 36), criminal attempt (No. 37), witness tampering (No. 38), distribution of controlled substances (No. 39), and conspiracy to distribute controlled substances (No. 40). None of those individual instructions on "pattern of racketeering activity" concerned assault with a dangerous weapon.

There is reason to doubt, taking all of these instructions together, that a jury was reasonably likely to rely on attempted assault with a dangerous weapon as an act of racketeering. The assault offense was absent from the definition of the charged pattern of racketeering activity in Instruction No. 12 and omitted from the definition of "racketeering activity" in Instruction No. 13. Unlike the crimes of murder, drug trafficking, and witness tampering, which were enumerated in Instructions No. 12, 13, and 35, the offense of assault with a dangerous weapon received no freestanding final instruction that defined it as racketeering activity. The jury would have convicted on an impermissible theory only if it relied on the errant cross-reference to Count III in Instruction No. 35, despite its inconsistency with other instructions.

Even assuming, however, that the reference to Count III in Instruction No. 35 created an obvious error in the instructions as a whole, Haynie has not shown that the error affected his substantial rights. To meet that prong of the plain-error analysis, Haynie must show a reasonable probability that the disputed instruction affected the verdict. That argument fails in this case, because the jury acquitted Haynie on Count III, and there was strong evidence that he committed other acts of racketeering—distribution of controlled substances—that supported the conviction on Count I. Haynie conceded that he distributed drugs; two witnesses testified that they purchased crack cocaine from Haynie; and Haynie pleaded guilty to two drug

-6-

trafficking charges in state court. There is no reasonable probability that the jury, having found Haynie not guilty of attempted assault with a dangerous weapon, inconsistently relied on attempted assault with a dangerous weapon to convict him of the RICO conspiracy.

## III.

Haynie next contends that the district court erred at sentencing in calculating an advisory guideline range. We conclude that the district court mistakenly treated aggravated assault with a firearm as an act of racketeering for purposes of the guidelines, and this error affected the guideline range. The error was not harmless, so a remand for resentencing is required.

When a defendant is convicted of a RICO offense, the defendant's base offense level under the sentencing guidelines is the greater of 19 or "the offense level applicable to the underlying racketeering activity." USSG § 2E1.1(a)(1), (2). The commentary provides that "[w]here there is more than one underlying offense," the district court should "treat each underlying offense as if contained in a separate count of conviction for the purposes of" determining the base offense level. *See id.* § 2E1.1, comment. (n.1). Although the jury acquitted Haynie of attempted murder and attempt to commit assault with a dangerous weapon, a sentencing court is not precluded from considering conduct underlying an acquitted charge if the conduct has been proved by a preponderance of the evidence. *United States v. Watts*, 519 U.S. 148, 157 (1997) (per curiam).

The district court calculated Haynie's offense level under § 2E1.1(a)(2). The court based its calculation on three separate underlying racketeering activities: distribution of crack cocaine, aggravated assault with a firearm in September 2008, and aggravated assault with a firearm in September 2012. All three activities carried an offense level of 19, *see* USSG §§ 2A2.2(a), (b)(2)(A), 2E1.1(a)(1), and the

grouping rules under the guidelines brought the combined offense level for the RICO conspiracy offense to 22. *See id.* § 3D1.4.

Aggravated assault with a firearm, however, is not a racketeering activity under 18 U.S.C. § 1961(1) or USSG § 2E1.1, so the district court erred in considering those offenses as "underlying racketeering activity" under § 2E1.1(a)(2). Without that error, Haynie's offense level would have been 19 rather than 22. The government contends that the error was harmless, because the district court said at sentencing that "even if the guidelines range had been higher, the court would have varied downward and would have imposed the same sentence." Without the error, however, the guideline range would have been lower, not higher, and the court did not speak to whether it would have varied upward from a lower advisory guideline range. The record is therefore insufficient to establish that the error in calculating the guideline range was harmless, and resentencing is required.

Haynie raises three other sentencing issues. First, he maintains that he should have received full credit under USSG § 5G1.3(b) on his advisory federal sentence for time that he served in Nebraska state prison before his federal sentencing. Haynie did not raise this point in the district court. Because the case must be remanded for resentencing, we decline to address the issue at this time and leave it for the district court to consider in the first instance in a renewed proceeding.

Second, he argues that the district court plainly erred by ordering that Haynie's federal sentence would "start today"—*i.e.*, on the date of his federal sentencing. Again, Haynie did not raise this objection in the district court, but he is correct that only the Bureau of Prisons "has the authority to determine when a federal sentence commences." *United States v. Hayes*, 535 F.3d 907, 910 (8th Cir. 2008); *see United States v. Wilson*, 503 U.S. 329, 335 (1992). Haynie's federal sentence will not begin to run until state authorities release him to the Bureau of Prisons. *See* 18 U.S.C. § 3585(a). The district court may reconsider this matter at resentencing.

Third, Haynie contends that the district court erred in imposing a special condition of supervised release. At the sentencing hearing, the court said that it would impose "all the special conditions that are outlined in the presentence investigation report and recommendation." Special condition J in the government's sentencing recommendation provided that Haynie "must not associate with any member, prospect, or associate member of any criminal street gang." Although the condition does not appear in the written judgment, the oral pronouncement of sentence typically controls when there is a conflict. *United States v. Mayo*, 642 F.3d 628, 633 (8th Cir. 2011) (per curiam).

In *United States v. Washington*, 893 F.3d 1076 (8th Cir. 2018), this court concluded that a condition stating that the defendant could not "knowingly associate with any member, prospect, or associate member of any gang" was unconstitutionally vague. *Id.* at 1081. The court ruled that the undefined term "gang" was vague because it gave "no notice as to which groups of people are actually covered," and it encompassed groups of people who are not associated with criminal activity. *Id.* *Washington* also said that the term "associate member" was vague, because it would include those who have only a social connection to an individual gang member, and could extend even to a probation officer. *Id*. The Second Circuit in *United States v. Green*, 618 F.3d 120, 123 (2d Cir. 2010) (per curiam), reached a different conclusion as to the term "criminal street gang," because it is cabined by a clear statutory definition in 18 U.S.C. § 521(a). At resentencing, the district court may reconsider whether to impose special condition J in light of *Washington* and *Green*.

\*     \*     \*

For these reasons, the judgment of conviction is affirmed, but the sentence is vacated, and the case is remanded for resentencing. Haynie's *pro se* motion for *ex parte* hearing is denied.

_____