19-3087-cr (L)
*US v. Hopper et al.*

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

# SUMMARY ORDER

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this Court's Local Rule 32.1.1. When citing a summary order in a document filed with this Court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 13th day of May, two thousand twenty-two.

PRESENT:   JOHN M. WALKER, JR.,
           GUIDO CALABRESI,
           JOSÉ A. CABRANES,
                      *Circuit Judges.*

---

UNITED STATES OF AMERICA,

       *Appellee,*

ANTHONY HOPPER, FKA SEALED DEFENDANT #2, AKA A-DOG, DAQUAN DOWDELL, FKA SEALED DEFENDANT #1, AKA CANNON, KEMNORRIS KINSEY, FKA SEALED DEFENDANT #13, AKA PEP, JAMAR LONG, FKA SEALED DEFENDANT #5, REDDELL SMITH, FKA SEALED DEFENDANT #8,

       *Defendants-Appellants,*

JAVON PETERSON, FKA SEALED DEFENDANT #3, DAVON SULLIVAN, FKA SEALED DEFENDANT #4, DESHAWNTE WALLER, FKA SEALED DEFENDANT #6, SHAQUILLE BRELAND, FKA SEALED DEFENDANT #7, RASHAWN WYNN, FKA SEALED DEFENDANT #9, AKA WORMY, QUALIK VAUGHN, FKA SEALED DEFENDANT #10, AKA Q, AKA QUALIK VAUGH,

19-3087-cr (L), 20-3415-cr (Con)
20-3501-cr (Con), 20-3700-cr (Con),
20-4149-cr (Con), 20-4150-cr (Con),
20-4190-cr (Con)

TERRY LINEN, FKA SEALED DEFENDANT #11, JASON LEBRON, FKA SEALED DEFENDANT #12, AKA RILLA, DAMANI PRINCE, FKA SEALED DEFENDANT #14,

*Defendants.*<sup>*</sup>

_____

| | |
|---|---|
| **FOR APPELLEE:** | RAJIT S. DOSANJH (Nicolas Commandeur, *on the brief*) *for* Carla B. Friedman, United States Attorney, Northern District of New York, Syracuse, NY. |
| **FOR DEFENDANT-APPELLANT KINSEY:** | MICHELLE ANDERSON BARTH, Law Office of Michelle Anderson Barth, Burlington, VT. |
| **FOR DEFENDANT-APPELLANT DOWDELL:** | KENNETH M. MOYNIHAN, Syracuse, NY. |
| **FOR DEFENDANT-APPELLANT SMITH:** | GWEN M. SCHOENFELD, Law Office of Gwen M. Schoenfeld, LLC, New York, NY. |
| **FOR DEFENDANT-APPELLANT HOPPER:** | JEFFREY R. PARRY, Fayetteville, NY. |
| **FOR DEFENDANT-APPELLANT LONG:** | MALVINA NATHANSON, New York, NY. |

Appeal from judgments of the United States District Court for the Northern District of New York (Frederick J. Scullin, Jr., *Judge*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgments of the District Court be and hereby are **AFFIRMED IN PART AND VACATED AND REMANDED IN PART**.

Defendants Kemnorris Kinsey, Daquan Dowdell, Reddell Smith, Anthony Hopper, and Jamar Long appeal from judgments following their convictions in the District Court for the Northern District of New York for violations of the Racketeer Influenced and Corrupt Organizations (RICO) Act, 18 U.S.C. § 1961 *et seq.* On October 25, 2018, a federal grand jury returned a single-count RICO indictment against Defendants and others, alleging that they were members of a criminal organization called the "110 Gang," which engaged in drug-trafficking,

_____

<sup>*</sup> The Clerk of Court is directed to amend the caption as set forth above.

assault, and murder in southwest Syracuse, New York. Kinsey, Dowdell, and Smith pleaded guilty. On August 22, 2019, the grand jury returned a superseding indictment against Hopper and Long, adding a count against Hopper for discharge of a firearm during and in relation to a crime of violence, 18 U.S.C. § 924(c)(1)(A)(iii). Long then pleaded guilty. Following a trial in October 2019, Hopper was convicted of the RICO count and acquitted of the firearm count. Defendants were sentenced and timely appealed. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

## DISCUSSION

We address Defendants' arguments on appeal in turn.

### I. Kinsey

#### A. Offense Level Calculation

Kinsey argues—and the Government concedes—that the District Court plainly erred in calculating his offense level when it adopted a PSR that included aggravated assault as a "pseudo-count" under the RICO Sentencing Guideline.[1]

The RICO Sentencing Guideline, U.S.S.G. § 2E1.1, instructs courts to apply the greater of a base level 19 or "the offense level applicable to the underlying racketeering activity." The Guidelines do not define "underlying racketeering activity," but as we have said, § 2E1.1 governs not only RICO offenses themselves but "also governs the treatment of underlying predicate acts." *United States v. Massino*, 546 F.3d 123, 135 (2d Cir. 2008) (per curiam). The implication of this, as our sister circuits have explicitly held, and the Government agrees, is that "'underlying racketeering activity' must be interpreted to mean charged or uncharged conduct that would qualify as a predicate act under [the RICO statute] 18 U.S.C. § 1961(1)." *United States v. Flores*, 912 F.3d 613, 622 (D.C. Cir. 2019) (collecting cases and noting that it is "not aware of any contrary holdings in the courts of appeal"); *accord United States v. Sandoval*, 6 F.4th 63, 104 (1st Cir. 2021) ("We have understood 'underlying racketeering activity' in this context to mean any act, whether or not charged against the

---

[1]     Kinsey also challenges the use of robbery under New York State Penal Law § 160.15 as a pseudo-count, but does so only on sufficiency-of-the-evidence grounds, an argument we reject based on eye-witness testimony offered at Hopper's trial. *See United States v. Dowdell et al.*, No. 5:18-CR-353 (N.D.N.Y. Dec. 3, 2019), Dkt. No. 255, 1106-08; *see also United States v. Massino*, 546 F.3d 123, 135 (2d Cir. 2008) (per curiam) ("When the offense of conviction is a RICO conspiracy, relevant conduct may include 'underlying predicate acts,' even if not proven at trial beyond a reasonable doubt, as long as the sentencing court finds that they were proven by the lower preponderance of the evidence standard." (internal quotation marks omitted)).

defendant personally, that qualifies as a RICO predicate act under 18 U.S.C. § 1961(1) and is otherwise relevant conduct under U.S.S.G. § 1B1.3." (cleaned up)).

Aggravated assault does not constitute a predicate racketeering act under 18 U.S.C. § 1961(1). *Park S. Assocs. v. Fischbein*, 626 F. Supp. 1108, 1114 (S.D.N.Y. 1986), *aff'd* 800 F.2d 1128 (2d Cir. 1986). It therefore cannot be considered "underlying RICO activity" for purposes of calculating Kinsey's offense level under § 2E1.1. *See United States v. Haynie*, 8 F.4th 801, 807 (8th Cir. 2021) ("Aggravated assault . . . is not a racketeering activity under 18 U.S.C. § 1961(1) or USSG § 2E1.1, so the district court erred in considering [that offense] as 'underlying racketeering activity' under § 2E1.1(a)(2)."). Because there is no indication in the record of how the District Court would have sentenced Kinsey had it calculated the offense level correctly, "the court's reliance on an incorrect range . . . suffice[s] to show an effect on the defendant's substantial rights." *Molina-Martinez v. United States*, 578 U.S. 189, 201 (2016). As such, we vacate Kinsey's sentence and remand for the purpose of recalculating his offense level and resentencing accordingly.

B. Criminal History Calculation

Kinsey also argues that the District Court miscalculated his criminal history category. Where, as here, Kinsey "had . . . the opportunity" to raise his challenge to an advisory Sentencing Guidelines calculation, but failed to do so, we review such an unpreserved challenge for plain error. *United States v. Gordon*, 291 F.3d 181, 190-91 (2d Cir. 2002). To succeed, Kinsey bears the burden of establishing an error that is "clear or obvious" based on the record before us. *United States v. Marcus*, 560 U.S. 258, 262 (2010) (internal quotation marks omitted).

Kinsey argues that the District Court erred when it treated his earlier New York state misdemeanor conviction for possession of crack cocaine (the "2015 Conviction") as a "prior sentence," and thus part of his "criminal history" for purposes of calculating his sentence. Under U.S.S.G. § 4A1.1, a defendant's criminal history score is based in part on his "prior sentences." A "prior sentence" means "any sentence previously imposed upon adjudication of guilt . . . for conduct not part of the instant offense." U.S.S.G. § 4A1.2(a)(1). Kinsey claims that the 2015 Conviction was not a "prior sentence," but rather, was conduct that was "part" of the RICO conspiracy. *Id.* For that reason, he contends that it was error for the District Court to have scored it as part of his criminal history, thus increasing his sentencing range under the Guidelines.

Kinsey and the Government dispute whether Application Note 4 to U.S.S.G. § 2E1.1, which describes when prior RICO offenses may be counted as "criminal history" as opposed to "part of the instant [RICO] offense,"[2] should determine the outcome here. We need not reach this point. On

---

[2] That Note reads: "Certain conduct may be charged in the count of conviction as part of a 'pattern of racketeering activity' even though the defendant has previously been sentenced for that

the record before us, the District Court's decision to score the 2015 Conviction as a separate and unrelated "prior sentence," rather than as "part of the instant [RICO] offense," was not, as a factual matter, plainly erroneous.

Seventh degree misdemeanor drug possession in New York, the crime at issue in the 2015 Conviction, is not a predicate for a RICO conspiracy. *Compare* N.Y. Penal Law § 220.03 (describing seventh degree misdemeanor drug possession's elements) *with* 18 U.S.C. § 1961(1) (omitting drug possession from list of predicate offenses). And on the facts, the charged RICO predicate here involved drug *dealing* (not possession), which does qualify as "racketeering activity" under § 1961(1). It was Kinsey's admitted involvement in drug trafficking, and not personal use or ownership of drugs, that was the focus of the conspiracy.[3] When conduct is not relevant to the offense, it can properly be considered when calculating a defendant's criminal history under U.S.S.G. § 4A1.2. Accordingly, on this record, and given the deferential standard of plain error review, we cannot say that the District Court's characterization of this isolated incident of personal drug possession as distinct and apart from the underlying RICO offense was reversible error.[4]

---

conduct. Where such previously imposed sentence resulted from a conviction prior to the last overt act of the instant offense, treat as a prior sentence under § 4A1.2(a)(1) and not as part of the instant offense."

[3] Kinsey resists this conclusion by asserting the PSR establishes, as a factual matter, that he has not personally used cocaine since his teenage years (and so, presumably, would not have cause to possess it apart from the instant conspiracy). Read in context, however, this description is more ambiguous than Kinsey thinks, stating "[t]he defendant reports using and/or experimenting with the following substances: alcohol; marijuana; ecstasy and cocaine," before also noting that Kinsey "indicates he experimented with . . . cocaine on one or two occasions when he was 18 years old." Kinsey PSR ¶ 121. Such language suggests Kinsey reported using cocaine as a teenager, but it does not necessarily mean this was his final usage of the drug. More importantly, this passage simply relates what Kinsey chose to self-report to the probation office and is no guarantee of the statement's accuracy. And on that point, given the countervailing evidence in this case (namely, the PSR's findings as to the circumstances and nature of the 2015 Conviction), it would not have been plain error for the District Court to have declined to credit Kinsey's self-descriptions about his personal drug use in favor of the official police and court records to which it had access.

[4] Nor does the record support Kinsey's alternative argument that the District Court impermissibly "double counted" the 2015 Conviction as part of both his base offense level *and* his criminal history. *See United States v. Hampton*, No. 20-2986, 2021 WL 5918303, at *2 (2d Cir. Dec. 15, 2021) (summary order) (citing *United States v. Minicone*, 960 F.2d 1099, 1111 (2d Cir. 1992)). Kinsey is missing any link between the 2015 Conviction and either the overt acts to which he pleaded guilty or the quantity of cocaine to which he stipulated. In his plea agreement, Kinsey admitted that "on or about August 29, 2018, [he] sold an amount of cocaine base," and that he was "personally accountable for at least 28 grams but less than 112 grams" of cocaine. Kinsey App'x 43. The plea

C.  Standard Risk Condition 12

Finally, Kinsey's opening brief challenged the District Court's imposition of "Standard Risk Condition 12," which was identical to a risk condition we invalidated in *United States v. Boles*, 914 F.3d 95, 112 (2d Cir. 2019). While this case was pending, however, the Northern District of New York entered General Order 64, universally replacing the challenged risk condition wherever it was imposed. *See* Dkt. No. 405. Kinsey acknowledges that this challenge is therefore moot.

**II.  Dowdell**

A.  Rule 32

Dowdell first claims that the District Court failed to comply with Federal Rule of Criminal Procedure 32(i)(3)(B) by failing to rule on disputed aspects of his PSR. We review an unpreserved Rule 32 claim such as Dowdell's for plain error. *United States v. Wagner-Dano*, 679 F.3d 83, 92 (2d Cir. 2012). Dowdell objected to the PSR, claiming that he was not involved in an August 9, 2014 shooting as a matter of fact; that the shooting should not have scored as a "pseudo-count" as part of his offense level calculation; and that the PSR miscalculated his criminal history. A district court "satisfies its obligation to make the requisite specific factual findings when it explicitly adopts the factual findings set forth in the PSR at the sentencing hearing." *United States v. Requena*, 980 F.3d 30, 52 (2d Cir. 2020) (cleaned up). The record is clear that the District Court *did* rule on those disputed aspects of the PSR. *See* Dowdell App'x 84 ("[A]fter reviewing all that and am [*sic*] prepared to rule on that, I do adopt the factual information and the guidelines applications as they are contained in the report."). Dowdell's argument that this was insufficient because "the PSR itself expressly [left] the disputed issues . . . for the Court to resolve," Dowdell Br. 10, misrepresents the PSR. The probation office responded to Dowdell's objections, reaffirming its conclusions regarding Dowdell's accountability for the August 9, 2014 shooting and his criminal history calculation. Dowdell PSR 39-42. When it adopted the PSR, the District Court definitively accepted the Government's positions on these outstanding disputed issues (*i.e.*, the recommendations of the PSR, to which the Government made no objection).

B.  Sentencing Enhancement

Dowdell argues that the District Court erred in applying a sentencing enhancement under U.S.S.G. § 2D1.1(b)(1) for possession of a dangerous weapon during his RICO offense. This argument is unavailing. "The imposition of a sentencing enhancement under § 2D1.1(b)(1) involves

---

agreement and stipulation made no mention of the 2015 Conviction—which was for a non-distribution misdemeanor charge. This renders it far from "clear or obvious" that the 2015 Conviction "affect[ed] . . . [the] base offense level[]" for the RICO offense, such that we would conclude, on plain error review, that the district court erroneously "double counted."

questions of fact that we review for clear error." *United States v. Batista*, 684 F.3d 333, 343 (2d Cir. 2012). Dowdell argues that "'possession' requires the presence of the firearm," Dowdell Br. 17, but "a physical nexus between the defendant and the firearm . . . is by no means required in order for a court to impose the enhancement." *Batista*, 684 F.3d at 343. The enhancement is proper so long as a preponderance of the evidence supports a finding that possession of a firearm in furtherance of the narcotics conspiracy was "reasonably foreseeable" to the defendant. *Id.* Dowdell admitted to the 110 Gang's use of firearms in furtherance of their drug trade. *See* Dowdell App'x 59 ("110 Gang members routinely arm themselves with firearms in order to protect their territory [and] to protect their drug trade."). His admissions suffice to sustain the District Court's application of the enhancement.

C.  Criminal History Calculation

Dowdell next argues that the District Court abused its discretion when it calculated his criminal history. Although he does not dispute the accuracy of his criminal history, he maintains that his prior non-distribution drug possession convictions described in paragraphs 77, 78, and 80 of his PSR were "double counted," inappropriately contributing to both his instant offense and his prior criminal history score. As with Kinsey's challenge, Dowdell's argument fails because it is not clear, on the record before us, that the District Court plainly erred in treating these prior non-distribution convictions as conduct separate from the charged RICO offense.

D.  Offense Level Calculation

The government concedes, however, that the District Court erred by calculating Dowdell's offense level under U.S.S.G. § 2E1.1(a)(2) based on a "pseudo-count" of aggravated assault. This was plain error, for the reasons stated in Part I.A, *supra*. We therefore vacate and remand for the purpose of recalculating Dowdell's offense level and resentencing on that basis.

**III.  Smith**

A.  Offense Level and Imprisonment Range

The District Court erred by calculating Smith's offense level under U.S.S.G. § 2E1.1(a)(2) based on a "pseudo-count" of attempted aggravated assault. This was plain error, for the reasons stated in Part I.B, *supra*.[5] Moreover, as the Government acknowledges, the District Court also erred in its calculation of its sentence for Smith's violation of his supervised release. The District Court plainly erred in its assumption that Smith's 2009 RICO charge was a Class A felony, which it was not, because the predicate drug offense was subject to a 40-year maximum, 21 U.S.C.

---

[5]  Attempted aggravated assault also does not constitute RICO activity under 18 U.S.C. § 1961(1).

§841(b)(1)(B)(iii), and thus the 2009 RICO offense was subject to a 20-year maximum. *See* 18 U.S.C. §1963(a); *see also* 18 U.S.C. §3559(a)(1) (defining a Class A felony as a felony for which the maximum punishment is either life imprisonment or death).

In the absence of an argument by the Government that Smith's appeal waiver ought to apply to preclude Smith's challenges to the District Court's Guidelines calculations, *see* Gov't Br. 134, by the consent of the Government, we vacate Smith's sentence and remand to the District Court for resentencing.

### B. Standard Risk Condition 12

As Smith acknowledges, his argument concerning "Standard Risk Condition 12," is moot for the reasons discussed in Part I.C, *supra*.

### C. Substantive Unreasonableness

Smith argues that the District Court's sentence was substantively unreasonable for running his federal sentence consecutive to a state sentence for assault. We have stated that "the Guidelines leave it entirely to the district court's discretion whether to impose sentence 'concurrently, partially concurrently, or consecutively to [a] prior undischarged term of imprisonment to achieve a reasonable punishment for the instant offense.'" *United States v. Coppola*, 671 F.3d 220, 253 (2d Cir. 2012) (quoting U.S.S.G.§ 5G1.3(c)). But, given our decision to vacate and remand Smith's sentence because of the District Court's erroneous calculation of Smith's offense level and imprisonment range, *see* Part III.A, *supra*, and in the absence of any objection from the Government at oral argument, we conclude that on remand the District Court should be free to consider Smith's arguments concerning the propriety of a concurrent, as opposed to consecutive, sentence. *See Pepper v. United States*, 562 U.S. 476, 507 (2011) ("Because a district court's original sentencing intent may be undermined by altering one portion of the calculus, an appellate court when reversing one part of a defendant's sentence may vacate the entire sentence so that, on remand, the trial court can reconfigure the sentencing plan to satisfy the sentencing factors in 18 U.S.C. § 3553(a)." (cleaned up)).

We therefore vacate Smith's sentence and remand for purposes of plenary resentencing.

## IV. Hopper

### A. Double Jeopardy

Hopper argues that his federal racketeering charge violated his Fifth Amendment right against double jeopardy in light of a previous acquittal on a state murder charge. But Hopper's federal RICO charge is an entirely different crime than the state murder of which he was acquitted. Even if it were not, the "dual sovereignty" doctrine would defeat his claim, *see United States v. Burden*, 600 F.3d 204, 228-29 (2d Cir. 2010), and the so-called *Bartkus* exception "is not triggered simply by

cooperation between the two authorities," such as the joint investigation at issue here. *Id.* at 229; *cf. Bartkus v. Illinois*, 359 U.S. 121, 123-24 (1959).

B. Inconsistent Verdict

Hopper argues that the jury's verdict was inconsistent, insofar as Hopper was acquitted of discharging a firearm but convicted of murdering Anthony Sistrunk, who was being fired upon at the time of his death by car crash. Given the facts of the Sistrunk murder and the allegations of Hopper's participation, we perceive no inconsistency, but even if we did, we are "not in the business of policing verdicts for the consistency of the jury's findings of guilty and not guilty on various counts," *United States v. Capers*, 20 F.4th 105, 126 (2d Cir. 2021), and Hopper's claim is unreviewable.

C. Maddox Murder

Hopper argues that the District Court erred in considering acquitted conduct in its calculation of his offense level under the Guidelines, determining by a preponderance of the evidence that Hopper was responsible for the murder of Gregory Maddox. We review a district court's findings concerning relevant conduct for clear error. *United States v. Pica*, 692 F.3d 79, 88 (2d Cir. 2012). We see no error, much less clear error, in the District Court's consideration of the Maddox murder. *See Massino*, 546 F.3d at 135.

D. Evidentiary and Discovery Issues

Hopper argues that the District Court erred in its rulings regarding a number of evidentiary and discovery issues.

First, Hopper claims that the District Court should not have granted or maintained a protective order barring him from retaining copies of certain evidentiary "Protected Materials" in prison. We review a district court's decision to grant or modify a protective order for abuse of discretion. *United States v. Delia*, 944 F.2d 1010, 1018 (2d Cir. 1991). The District Court granted its discovery protective order based on concerns over witness intimidation. Indeed, one of Hopper's co-defendants was actually charged with witness retaliation, and the 110 Gang had a history of engaging in violence to intimidate the community. In light of such concerns, a "trial court can and should . . . place a defendant and his counsel under enforceable orders against unwarranted disclosure of the materials which they may be entitled to inspect." *Alderman v. United States*, 394 U.S. 165, 185 (1969); *see also United States v. Padilla-Galarza*, 990 F.3d 60, 76-78 (1st Cir. 2021) (upholding a protective order prohibiting incarcerated defendant from retaining copies of a government witness list with him in prison). In the circumstances presented, the protective order was not an abuse of discretion.

Hopper also argues that the timing of certain discovery productions, and the extent of discovery material produced, violated his right to Due Process. The record, however, is clear that

9

substantial productions were made by the Government months in advance of trial. *See* Gov't App'x 136-37. Later productions about which Hopper complains in particular—*e.g.*, of DNA evidence and jail phone call recordings—were still produced far enough in advance and in a manner such that Hopper was not prejudiced by their disclosure. Indeed, we have declined to find discovery violations for more voluminous disclosures made much closer to trial. *See, e.g., United States v. Douglas*, 525 F.3d 225, 245-46 (2d Cir. 2008) (production of 290 pages of possible impeachment material the week before trial not a disclosure violation). Nor is Hopper correct that the Government improperly disclosed its expert witnesses or failed to provide adequate summaries of their expected testimony. The District Court found that the experts' own reports provided a sufficient description of the experts' opinions and brought the Government into compliance with Federal Rule of Criminal Procedure 16, a finding with which we do not discern clear error. Gov't App'x 167-68. And even if such disclosures did violate the Rule, Hopper fails to establish the prejudice necessary for reversal. *See United States v. Vinas*, 910 F.3d 52, 60-61 (2d Cir. 2018).

**V.  Long**

A. Prior State Drug Trafficking Offense

Long signed a plea agreement that included an appeal waiver for any sentence of 240 months or less, and Long was sentenced to 210 months. The Government invokes Long's waiver on appeal, and that waiver bars his *pro se* appellate claim that the District Court erred in counting a prior state drug trafficking offense toward his criminal history rather than as related conduct.

B. Credit for Custody

Long is also incorrect that he is entitled to credit for time "spent in federal custody official detention prior to the date [his federal] sentence commenced." Long Br. 2. *See Lugo v. Hudson*, 785 F.3d 852, 854-55 (2d Cir. 2015) ("If a prisoner is serving a state sentence when he is produced for a federal prosecution, the writ temporarily transfers him to federal custody for prosecution but the state retains primary custody for the purpose of calculating his state sentence.").

**CONCLUSION**

In conclusion, having considered all the arguments of Defendants on appeal, for the foregoing reasons, we:

1. **VACATE** Kinsey's sentence and **REMAND** for resentencing for the purpose of addressing the District Court's error in including aggravated assault as a "pseudo-count" under the RICO Sentencing Guideline;
2. **VACATE** Dowdell's sentence and **REMAND** for resentencing for the purpose of addressing the District Court's error in including aggravated assault as a "pseudo-count" under the RICO Sentencing Guideline;

10

3.  **VACATE** Smith's sentence and **REMAND** for plenary resentencing; and

4.  **AFFIRM** the judgments of the District Court with respect to Hopper and Long.[6]

The Government's pending motion for summary affirmance as to Long's appeal, Dkt. No. 264, is **DISMISSED** as moot. The motion filed by Malvina Nathanson — counsel to Long on appeal — to be relieved as counsel pursuant to *Anders v. California*, 386 U.S. 738 (1987), Dkt. No. 253, is **GRANTED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

---

[6] Upon remand, the District Court will be free to conduct any other such proceeding with regards to Kinsey, Dowdell, and Smith, as may be required in the interest of justice.